# EXHIBIT A

2216-CV16343

Electronically Filed - Jackson - Independence - July 25, 2022 - 10:56 AM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

| | |
|---|---|
| B.B. individually and on behalf of all others similarly situated, | ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No: |
| | ) Division: |
| **LINCARE HOLDINGS INC.** | ) |
| **Serve:** | ) |
| **C T CORPORATION SYSTEM** | ) |
| **120 SOUTH CENTRAL AVENUE** | ) |
| **CLAYTON, MO 63105** | ) |
| | ) |
| Defendant. | ) |
| | ) |

<u>**CLASS ACTION PETITION FOR DAMAGES**</u>

COMES NOW ("Plaintiff"), individually and on behalf of all Missouri citizens who are similarly situated for her Class Action Petition for Damages against Defendant Lincare Holdings Inc. (hereinafter sometimes referred to as "Defendant Lincare", "Lincare", respectfully states and alleges as follows:

<u>**NATURE OF THE CASE**</u>

1.      This is a class action brought by Plaintiff, individually and on behalf of all citizens who are similarly situated (*i.e.*, the Class Members), seeking to redress Defendant's willful and reckless violations of her privacy rights. Plaintiff and the other Class Members are patients of Lincare who entrusted their Protected Health Information ("PHI") and Personally Identifiable Information ("PII") to Lincare. Defendant Lincare, has shared Plaintiffs' PHI and PII with persons who are not authorized to have said PHI and PII. Defendant betrayed Plaintiffs' trust by failing to properly safeguard and protect their PHI and PII and publicly disclosing their PHI and PII without authorization in violation of Missouri common law.

Case 4:22-cv-00670-FJG     Document 1-1     Filed 10/20/22     Page 2 of 88

2.    This action pertains to Defendant's unauthorized disclosure of the Plaintiffs' PHI and PII that occurred September 26, 2021 (the "Breach").

3.    Defendant disclosed Plaintiff's and the other Class Members' PHI and PII to unauthorized persons as a direct and/or proximate result of Defendant's failure to safeguard and protect their PHI and PII.

4.    The wrongfully disclosed PHI and PII included, *inter alia*, Plaintiff's and the other Class Members' name, Social Security Number, physical address, date of birth, telephone number, and medical condition and diagnosis.

5.    Defendant flagrantly disregarded Plaintiff's and the other Class Members' privacy and property rights by recklessly failing to take the necessary precautions required to safeguard and protect Plaintiff's and the other Class Members' PHI and PII from unauthorized disclosure. Plaintiff's and the other Class Members' PHI and PII was improperly handled, inadequately protected, readily able to be copied by thieves and not kept in accordance with basic security protocols. Defendant's obtaining of the information and sharing of same also represent a flagrant disregard of Plaintiff's and the other Class Members' rights, both as to privacy and property.

6.    Plaintiff has standing to bring this action because as a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Breach, Plaintiff has incurred (and will continue to incur) damages in the form of, *inter alia*, (i) loss of privacy and/or (ii) the additional damages set forth in detail below, which are incorporated herein by reference.

7.    Defendant's wrongful actions and/or inaction and the resulting Breach have also placed Plaintiff and the other Class Members at an imminent, immediate and continuing increased risk of identity theft, identity fraud and medical fraud.  Indeed, Javelin Strategy & Research ("Javelin"), a leading provider of quantitative and qualitative research, released its 2012 Identity

2

Fraud Report ("the Javelin Report"), quantifying the impact of data breaches. According to the Javelin Report, individuals whose PHI and PII is subject to a reported data breach—such as the Data Breach at issue here—are approximately 9.5 times more likely than the general public to suffer identity fraud and/or identity theft. Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported, and a high probability that criminals who may now possess Plaintiff's and the other Class Members' PHI and PII and not yet used the information will do so at a later date or re-sell it.

8.     Plaintiff and the Class members have also suffered and are entitled to damages for the lost benefit of their bargain with Defendant Lincare. Plaintiff and members of the Class paid Lincare for its services including them protecting their PHI and PII. The lost benefit of the bargain is measured by the difference between the value of what Plaintiff and the members of the Class should have received when they paid for their services, and the value of what they actually did receive; services without adequate privacy safeguards. Plaintiff and members of the Class have been harmed in that they (1) paid more for privacy and confidentiality than they otherwise would have, and (2) paid for privacy protections they did not receive. In that respect, Plaintiff and the members of the Class have not received the benefit of the bargain and have suffered an ascertainable loss.

9.     Additionally, because of Defendant's conduct, Plaintiff and members of the Class have been harmed in that Defendant has breached its common law fiduciary duty of confidentiality owed to Plaintiff and member of the Class.

10.     Accordingly, Plaintiff and the other Class Members seek redress against Defendants for breach of implied contract, breach of contract, invasion of privacy by the public

3

disclosure of private facts, common law negligence, negligent training and supervision, and breach of fiduciary duty of confidentiality.

11.     Plaintiff, individually and on behalf of the other Class Members, seeks all (i) actual damages, economic damages, and/or nominal damages, (ii) injunctive relief, and (iii) attorneys' fees, litigation expenses, and costs.

<strong><u>JURISDICTION AND VENUE</u></strong>

12.     The Court has jurisdiction over the parties and the subject matter of this action. Jurisdiction is proper because both Plaintiff and Defendant are citizens of the State of Missouri and Defendant is a business operating, and licensed under, the laws of the state of Missouri.

13.     Venue is proper in Independence, Jackson County, Missouri, pursuant to RSMo §508.010 because the acts complained of occurred in Blue Springs, Jackson County, Missouri.

<strong><u>PARTIES</u></strong>

14.     Plaintiff is an adult residing in Blue Springs, Jackson County, Missouri.

15.     Defendant Lincare is, upon information and belief, a Missouri Corporation with its headquarters in Clayton, St. Louis County, Missouri. Defendant can be served at its Registered Address at 120 South Central Avenue, Clayton, Missouri 63105.

<strong><u>BACKGROUND FACTS</u></strong>

16.     Certain allegations are made upon information and belief.

17.     Defendant Lincare is a health care provider pursuant to state and federal law, providing health care and medical services to the general public, operating at 2800 US-40 Highway, Blue Springs, Jackson County, Missouri.

18.     As a part of its business operations, Defendant collects and maintains PHI and PII of its patients.

4

19.     Plaintiffs were patients of Defendant and, as a result, provided their PHI and PII to Defendant.

20.     Plaintiffs entered into an implied contract with Defendant for the adequate protection of their PHI and PII.

21.     Defendants are required to maintain the strictest privacy and confidentiality of Plaintiff and the proposed Class Members' medical records and other PHI and PII.

22.     Defendant posts its privacy practices online, at https://www.lincare.com/en/policies/privacy

23.     Had Defendant informed Plaintiffs that it would not protect Plaintiffs' privacy, Plaintiffs would have sought treatment elsewhere.

24.     On June 21, 2022 Defendant sent a letter to Plaintiff and members of the proposed Class to inform them of a wrongful disclosure of health information incident that impacted their PHI and PII.

25.     According to the letter, "On September 26, 2021, Lincare identified unusual activity on certain systems within its network…"

26.     Further, the June 21st letter stated that Plaintiffs' and the Class Members' PHI and PII was first accessed on September 10, 2021; the infiltration was identified on September 26, 2021; and, the infiltrator(s) were not blocked until September 29, 2021.

27.     Third parties enjoyed unfettered access to Plaintiff's and the Class Members' PHI and PII for over three weeks without being stopped.

28.     The information that was contained in the files were names, social security numbers, physical addresses, dates of birth, telephone numbers, dates of service and medical conditions, treatment and diagnoses.

29.     As a result of the disclosure, Defendant recommended that Plaintiffs monitor their credit reports and take further action related to personal and financial information.

30.     The disclosure of the PHI and PII at issue was a result of the Defendant's inadequate safety and security protocols governing PHI and PII.

31.     The wrongfully disclosed PHI and PII included, *inter alia*, Plaintiff's and the other Class Members' name, Social Security Number, physical address, date of birth, telephone numbers, and medical condition, treatment and diagnosis.

32.     Upon information and belief, the Breach affected tens of thousands of Defendant's patients.

33.     As a direct and/or proximate result of Defendant's failure to properly safeguard and protect the PHI and PII of its patients, Plaintiff's and the other Class Members' PHI and PII was stolen, compromised and wrongfully disseminated without authorization.

34.     Defendant had a duty to its patients to protect them from wrongful disclosures.

35.     As a health care provider, Defendant is required to train and supervise its employees regarding the policies and procedures as well as the State and Federal laws for safeguarding patient information.

36.     The timing of the June 21, 2022 notice letter was well beyond the time frame required by applicable laws.

37.     Defendant is a covered entity pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"). *See* 45 C.F.R. § 160.102. Defendant must therefore comply with the HIPAA Privacy Rule and Security Rule. *See* 45 C.F.R. Part 160 and Part 164, Subparts A through E.

6

38.     Defendant is a covered entity pursuant to the Health Information Technology Act ("HITECH")[1].  *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

39.     The HIPAA and HITECH rules work in conjunction with the already established laws of privacy Missouri.  HIPAA and HITECH do not recognize an individual right of claim for violation but provide the guidelines for the standard of procedure dictating how patient medical information should be kept private.

40.     HIPAA's Privacy Rule, otherwise known as "Standards for Privacy of Individually Identifiable Health Information," establishes national standards for the protection of health information.

41.     HIPAA's Security Rule, otherwise known as "Security Standards for the Protection of Electronic Protected Health Information," establishes national security standards for the protection of health information that is held or transferred in electronic form. See 42 C.F.R. §§ 164.302-164.318.

42.     HIPAA limits the permissible uses of "protected health information" and prohibits the unauthorized disclosure of "protected health information." 45 C.F.R. § 164.502. HIPAA requires that covered entities implement appropriate administrative, technical, and physical safeguards for this information and requires that covered entities reasonably safeguard protected health information from any intentional or unintentional use or disclosure that is in violation of the standards, implementation specifications or other requirements of this subpart. *See* 45 C.F.R. § 164.530(c).

43.     HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the

---

[1] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

7

covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. *See* 45 C.F.R. § 164.530(e).

44.    HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of protected health information in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

45.    Under HIPAA:

Protected health information means individually identifiable health information:

(1) Except as provided in paragraph (2) of this definition, that is:

(i) Transmitted by electronic media;

(ii) Maintained in electronic media; or

(iii) Transmitted or maintained in any other form or medium.[2]

46.    HIPAA and HITECH obligated Defendant to implement technical policies and procedures for electronic information systems that maintain electronic protected health information so that such systems were accessible only to those persons or software programs that had been granted access rights and who have a working need to access and view the information. *See* 45 C.F.R. § 164.312(a)(1); *see also* 42 U.S.C. §17902.

47.    HIPAA and HITECH also obligated Defendant to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic protected health information that are reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

---

[2] 45 C.F.R. § 160.103

48. HIPAA further obligated Defendant to ensure that its workforce complied with HIPAA security standard rules (*see* 45 C.F.R. § 164.306(a)(4)) to effectively train its workforces on the policies and procedures with respect to protected health information, as necessary and appropriate for those individuals to carry out their functions and maintain the security of protected health information. *See* 45 C.F.R. § 164.530(b)(1).

49. HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." *See* US Department of Health & Human Services, Security Rule Guidance Material.[3] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." *See* US Department of Health & Human Services, Guidance on Risk Analysis.[4]

50. Should a health care provider experience an unauthorized disclosure, it is required to conduct a Four Factor Risk Assessment (HIPAA Omnibus Rule). This standard requires, "A covered entity or business associate must now undertake a four-factor risk assessment to determine whether or not PHI has been compromised and overcome the presumption that the breach must be reported. The four-factor risk assessment focuses on:

---

[3] http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html
[4] https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html

(1) the nature and extent of the PHI involved in the incident (e.g., whether the incident involved sensitive information like social security numbers or infectious disease test results);

(2) the recipient of the PHI;

(3) whether the PHI was actually acquired or viewed; and

(4) the extent to which the risk that the PHI was compromised has been mitigated following unauthorized disclosure (e.g., whether it was immediately sequestered and destroyed)."[5]

51.     The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, requires HIPAA covered entities and their business associates to provide notification following a breach of unsecured protected health information.

52.     The HIPAA Contingency Operations Rule, 45 C.F.R. §164.301(a), requires a healthcare provider to have security measures in place and train its employees and staff so that all its staff and employees know their rolls in facility security.

53.     Defendant failed to provide proper notice to Plaintiff of the disclosure.

54.     Defendant failed to conduct or improperly conducted the four-factor risk assessment following the unauthorized disclosure.

55.     As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Breach, the criminal(s) and/or their customers now have Plaintiff's and the other Class Members' compromised PHI and PII.

56.     There is a robust international market for the purloined PHI and PII, specifically medical information.  Defendant's wrongful actions and/or inaction and the resulting Breach have

---

[5] 78 Fed. Reg. 5641-46, *See also*, 45 C.F.R. §164.304

also placed Plaintiff and the other Class Members at an imminent, immediate and continuing increased risk of identity theft, identity fraud[6] and medical fraud.

57.     Identity theft occurs when someone uses an individual's PHI and PII, such as the person's name, Social Security number, or credit card number, without the individual's permission, to commit fraud or other crimes. *See* Federal Trade Commission, Fighting Back against Identity Theft, http://www.ftc.gov/bcp/edu/microsites/idtheft/consumers/ about-identity-theft.html (last visited Jan. 18, 2013). The Federal Trade Commission estimates that the identities of as many as nine million Americans are stolen each year. *Id.*

58.     The Federal Trade Commission correctly sets forth that "Identity theft is serious. While some identity theft victims can resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may lose out on job opportunities, or be denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit." *Id.*

59.     Identity theft crimes often involve more than just crimes of financial loss, such as various types of government fraud (such as obtaining a driver's license or official identification card in the victim's name but with their picture), using a victim's name and Social Security number to obtain government benefits and/or filing a fraudulent tax return using a victim's information. Identity thieves also obtain jobs using stolen Social Security numbers, rent houses and apartments and/or obtain medical services in a victim's name. Identity thieves also have been known to give

---

[6] According to the United States Government Accounting Office (GAO), the terms "identity theft" or "identity fraud" are broad terms encompassing various types of criminal activities. Identity theft occurs when PII is used to commit fraud or other crimes. These crimes include, *inter alia,* credit card fraud, phone or utilities fraud, bank fraud and government fraud (theft of government services).

a victim's PHI and PII to police during an arrest, resulting in the issuance of an arrest warrant in the victim's name and an unwarranted criminal record.

60.     According to the FTC, "the range of privacy-related harms is more expansive than economic or physical harm or unwarranted intrusions and that any privacy framework should recognize additional harms that might arise from unanticipated uses of data."[7] Furthermore, "there is significant evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute PII."[8]

61.     According to the Javelin Report, in 2011, the mean consumer cost of rectifying identity fraud was $354 while the mean resolution time of identity fraud was 12 hours. *Id.* at 6. In 2011, the consumer cost for new account fraud and existing non-card fraud increased 33% and 50% respectively. *Id.* at 9.   Consumers who received a data breach notification had a fraud incidence rate of 19% in 2011 and, of those experiencing fraud, 43% reported their credit card numbers were stolen and 22% of the victims reported their debit card numbers were stolen. *Id.* at 10.  More important, consumers who were notified that their PHI and PII had been breached were 9.5 times more likely to experience identity fraud than consumers who did not receive such a notification. *Id.* at 39.

62.     The unauthorized disclosure of a person's Social Security number can be particularly damaging since Social Security numbers cannot be easily replaced like a credit card or debit card.  In order to obtain a new Social Security number, a person must show evidence that

---

[7]   *Protecting Consumer Privacy in an Era of Rapid Change* FTC, Report March 2012 (http://www.ftc.gov/os/2012/03/120326privacyreport.pdf).
[8] *Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for Businesses and Policymakers*, *Preliminary FTC Staff Report*, 35-38 (Dec. 2010), *available at* http://www.ftc.gov/os/2010/12/101201privacyreport.pdf; *Comment of Center for Democracy & Technology,* cmt. #00469, at 3; *Comment of Statz, Inc.*, cmt. #00377, at 11-12.

someone is using the number fraudulently or is being disadvantaged by the misuse.  *See* Identity Theft and Your Social Security Number, SSA Publication No. 05-10064, October 2007*,* ICN 46327 (http://www.ssa.gov/pubs/10064.html).  Thus, a person whose PHI and/or PII has been stolen cannot obtain a new Social Security number until the damage has already been done.

63.    Obtaining a new Social Security number also is not an absolute prevention against identity theft. Government agencies, private businesses and credit reporting companies likely still have the person's records under the old number, so using a new number will not guarantee a fresh start.  For some victims of identity theft, a new number may actually create new problems; because prior positive credit information is not associated with the new Social Security number, it is more difficult to obtain credit due to the absence of a credit history.

64.    Medical fraud (or medical identity theft) occurs when a person's personal information is used without authorization to obtain, or receive payment for, medical treatment, services or goods. *See* www.ftc.gov/bcp/edu/microsites/idtheft/consumers/resolving-specific-id-theft-problems.html.  For example, as of 2010, more than 50 million people in the United States did not have health insurance according to the U.S. census. This, in turn, has led to a surge in medical identity theft as a means of fraudulently obtaining medical care. "Victims of medical identity theft [also] may find that their medical records are inaccurate, which can have a serious impact on their ability to obtain proper medical care and insurance benefits." *Id.*

65.    In its letter to Plaintiff and the Class Members, Defendant admits that at lease part of the harm and damages suffered by Plaintiff and the Class Members is the present and future risk of identify theft and medical fraud.

66.    Defendant flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy and property rights, and harmed them in the process, by not obtaining Plaintiff's

and the other Class Members' prior written consent to disclose their PHI and PII to any other person—as required by laws, regulations, industry standards and/or internal company standards.

67. Defendant flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy and property rights, and harmed them in the process, by failing to safeguard and protect and, in fact, wrongfully disseminating Plaintiff's and the other Class Members' PHI and PII to unauthorized persons.

68. Upon information and belief, Defendant flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy and property rights, and harmed them in the process, by failing to keep or maintain an accurate accounting of the PHI and PII wrongfully disclosed in the Breach.

69. Defendant flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy rights, and harmed them in the process, by failing to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure the security and confidentiality of Plaintiff's and the other Class Members' PHI and PII to protect against anticipated threats to the security or integrity of such information. Defendant's unwillingness or inability to establish and maintain the proper information security procedures and controls is an abuse of discretion and confirms its intentional and willful failure to observe procedures required by law, industry standards and/or their own internal policies and procedures.

70. The actual harm and adverse effects to Plaintiff and the other Class Members, including, without limitation, the imminent, immediate and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly and/or proximately caused by Defendant's above wrongful actions and/or inaction and the resulting Breach requires Plaintiff and the other Class Members to take affirmative acts to recover their peace of mind, and personal

security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts—for which there is a financial and temporal cost. Plaintiff and the other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

71.     Victims and potential victims of identity theft, identity fraud and/or medical fraud—such as Plaintiff and the other Class Members—typically spend hundreds of hours in personal time and hundreds of dollars in personal funds to resolve credit and other financial issues resulting from data breaches. *See Defend: Recover from Identity Theft*, http://www.ftc.gov/bcp/edu/microsites/idtheft//consumers/defend.html; *Fight Identity Theft*, www.fightidentitytheft.com. According to the Javelin Report, not only is there a substantially increased risk of identity theft and identity fraud for data breach victims, those who are further victimized by identity theft or identity fraud will incur an average fraud-related economic loss of $1,513 and incur an average of $354 of out-of-pocket expenses attempting to rectify the situation. *Id*. at 6.

72.     Other statistical analyses are in accord. The GAO found that identity thieves use PHI and PII to open financial accounts and payment card accounts and incur charges in a victim's name. This type of identity theft is the "most damaging" because it may take some time for the victim to become aware of the theft, in the meantime causing significant harm to the victim's credit rating and finances. Moreover, unlike other PHI and PII, Social Security numbers are incredibly difficult to change and their misuse can continue for years into the future. The GAO states that

victims of identity theft face "substantial costs and inconvenience repairing damage to their credit records," as well the damage to their "good name."

73.     The actual harm and adverse effects to Plaintiff and the Class Members, including the imminent, immediate and continuing increased risk of harm for further disclosure of Plaintiff's and the Class Members' PHI and PII caused by Defendant's above wrongful actions and/or inaction and the resulting Breach requires Plaintiffs and the Class Members to take affirmative acts to recover their peace of mind, and personal security including.  Plaintiff and the Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

74.     As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the Class Members' confidential medical information, Plaintiff and the Class Members suffered damages, including, without limitation, emotional distress, loss of the benefit of the bargain, exposure to heightened future risk of further disclosure, identity theft and medical fraud, loss of privacy, confidentiality, embarrassment, humiliation and loss of enjoyment of life.

75.     Defendant's wrongful actions and/or inaction directly and/or proximately caused the theft and dissemination into the public domain of Plaintiff's and the other Class Members' PHI and PII without their knowledge, authorization and/or consent.  As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Breach, Plaintiff and the other Class Members have incurred (and will continue to incur) damages in the form of, *inter alia*, (i) loss of privacy, (ii) the imminent, immediate and continuing increased risk of identity theft, identity fraud and/or medical fraud, (iii) out-of-pocket expenses to purchase credit monitoring, internet monitoring, identity theft insurance and/or other Breach risk mitigation products, (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft, identity fraud and/or

16

medical fraud pressed upon them by the Breach, including the costs of placing a credit freeze and subsequently removing a credit freeze, (v) the value of their time spent mitigating the increased risk of identity theft, identity fraud and/or medical fraud pressed upon them by the Breach and (vi) the lost benefit of their bargain when they paid for their privacy to be protected and it was not.

## CLASS ACTION ALLEGATIONS

76.     Pursuant to Rule 52.08 of the Missouri Rules of Civil Procedure, Plaintiff brings this class action as a class action on behalf of herself and the following Class of Missouri citizens who are similarly situated individuals:

> **All Missouri citizens of Defendant since September 26, 2016 and whose PHI and/or PII was disclosed by Defendant to unauthorized third parties.**

77.     On information and belief, the putative Class is comprised of tens of thousands of individuals making joinder impracticable.  Disposition of this matter as a class action will provide substantial benefits and efficiencies to the Parties and the Court.

78.     The rights of Plaintiff and each other Class Member were violated in a virtually identical manner as a direct and/or proximate result of Defendant's willful, reckless and/or negligent actions and/or inaction and the resulting Breach.

79.     Questions of law and fact common to all Class Members exist and predominate over any questions affecting only individual Class Members including, *inter alia*:

> a)      Whether Defendant willfully, recklessly and/or negligently failed to maintain and/or execute reasonable procedures designed to prevent unauthorized access to Plaintiff's and the other Class Members' PHI and/or PII;

> b)      Whether Defendant was negligent in failing to properly safeguard and protect Plaintiff's and the other Class Members' PHI and/or PII;

c)      Whether Defendant owed a duty to Plaintiff and the other Class Members to exercise reasonable care in safeguarding and protecting their PHI and/or PII;

d)      Whether Defendant breached its duty to exercise reasonable care in failing to safeguard and protect Plaintiff's and the other Class Members' PHI and/or PII;

e)      Whether Defendant was negligent in failing to safeguard and protect Plaintiff's and the other Class Members' PHI and/or PII;

f)      Whether, by publicly disclosing Plaintiff's and the other Class Members' PHI and/or PII without authorization, Defendant invaded their privacy; and

g)      Whether Plaintiff and the other Class Members sustained damages as a result of Defendant's failure to safeguard and protect their PHI and/or PII.

80.     Plaintiff and her counsel will fairly and adequately represent the interests of the other Class Members.  Plaintiff has no interests antagonistic to, or in conflict with, the other Class Members' interests.  Plaintiff's lawyers are highly experienced in the prosecution of consumer class action and data breach cases.

81.     Plaintiff's claims are typical of the other Class Members' claims in that Plaintiff's claims and the other Class Members' claims all arise from Defendant's failure to properly safeguard and protect their PHI and PII.

82.     A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiff's and the other Class Members' claims.  Plaintiff and the other Class Members have been harmed as a result of Defendant's wrongful actions and/or inaction and the resulting Breach.  Litigating this case as a class action will reduce the possibility of repetitious litigation relating to Defendant's conduct.

83.     Class certification, therefore, is appropriate pursuant to Missouri Rule 52.08(b)(3) because the above common questions of law or fact predominate over any questions affecting

18

individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

84.     Class certification also is appropriate pursuant to Missouri Rule 52.08(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

85.     The expense and burden of litigation would substantially impair the ability of Class Members to pursue individual lawsuits in order to vindicate their rights.  Absent a class action, Defendant will retain the benefits of its wrongdoing despite its serious violations of the law.

## COUNT I
## BREACH OF IMPLIED CONTRACT

86.     The preceding factual statements and allegations are incorporated herein by reference.

87.     Plaintiff and the other Class Members, as part of their agreement with Defendant, provided Defendant their PHI and PII.

88.     In providing such PHI and PII, Plaintiff and the other Class Members entered into an implied contract with Defendant, whereby Defendant became obligated to reasonably safeguard Plaintiff's and the other Class members' PHI and PII.

89.     Under the implied contract, Defendant was obligated to not only safeguard the PHI and PII, but also to provide Plaintiff and Class Members with prompt, adequate notice of any Data Breach or unauthorized access of said information.

90.     Defendant breached the implied contract with Plaintiff and the other Class Members by failing to take reasonable measures to safeguard their PHI and PII.

91.     As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information,

19

Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

92.     Plaintiff and the other Class Members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; and, (vii) emotional distress. At the very least, Plaintiff and Class members are entitled to nominal damages.

**COUNT II**
**NEGLIGENCE**

93.     The preceding factual statements and allegations are incorporated herein by reference.

94.     Defendant owed, and continues to owe, a duty to Plaintiff and the other Class Members to safeguard and protect their PHI and PII.

95.     Defendant breached its duty by failing to exercise reasonable care and failing to safeguard and protect Plaintiff's and the other Class Members' PHI and PII.

96.     It was reasonably foreseeable that Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the other Class Members' PHI and PII would result in an unauthorized third party gaining access to such information for no lawful purpose.

97.     As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information,

Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

98.     Plaintiff's and the other Class members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; and, (vii) emotional distress.  At the very least, Plaintiff and the other Class members are entitled to nominal damages.

99.     Defendant's wrongful actions and/or inaction and the resulting Breach (as described above) constituted (and continue to constitute) negligence at common law.

## COUNT III
## INVASION OF PRIVACY BY PUBLIC DISCLOSURE OF PRIVATE FACTS

100.     The preceding factual statements and allegations are incorporated herein by reference.

101.     Plaintiff's and the other Class Members' PHI and PII was (and continues to be) sensitive and personal private information.

102.     By virtue of Defendant's failure to safeguard and protect Plaintiff's and the other Class Members' PHI and PII and the resulting Breach, Defendant wrongfully disseminated Plaintiff's and the other Class Members' PHI and PII to unauthorized persons.

103.     Dissemination of Plaintiff's and the other Class Members' PHI and PII is not of a legitimate public concern; publicity of their PHI and PII was, is and will continue to be offensive to Plaintiff, the other Class Members and all reasonable people. The unlawful disclosure of same violates public mores.

104.     As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

105.     Plaintiff and the other Class members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; and, (vii) emotional distress. At the very least, Plaintiff and the other Class Members are entitled to nominal damages.

106.     Defendant's wrongful actions and/or inaction and the resulting Breach (as described above) constituted (and continue to constitute) an invasion of Plaintiff's and the other Class Members' privacy by publicly and wrongfully disclosing their private facts (*i.e.*, their PHI and PII) without their authorization or consent.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY OF CONFIDENTIALITY**

22

107.     The preceding factual statements and allegations are incorporated herein by reference.

108.     At all times relevant hereto, Defendant owed, and owes, a fiduciary duty to Plaintiff and the proposed class pursuant to Missouri common law, to keep Plaintiff's medical and other PHI and PII information confidential.

109.     The fiduciary duty of privacy imposed by Missouri law is explicated under the procedures set forth in the Health Insurance Portability and Accountability Act Privacy Rule, including, without limitation the procedures and definitions of 45 C.F.R. §160.103 and 45 C.F.R. §164.530 which requires a covered entity, health care provider, to apply appropriate administrative, technical, and physical safeguards to protect the privacy of patient medical records.

110.     Defendant breached its fiduciary duty to Plaintiff by disclosing Plaintiff and the other Class Members PHI and PII to unauthorized third parties.

111.     As a direct result of Defendant's breach of fiduciary duty of confidentiality and the disclosure of Plaintiff's confidential medical information, Plaintiff and the proposed Class Members suffered damages.

112.     As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

113.     Plaintiff and the other Class Members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred

to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; and, (vii) emotional distress. At the very least, Plaintiff and the other Class Members are entitled to nominal damages.

## COUNT V
## VIOLATIONS OF MISSOURI MERCHANDISING PRACTICES ACT, MO. REV. STAT. § 407.010 et seq.

114. The preceding factual statements and allegations are incorporated herein by reference.

115. RSMo. 407.020 prohibits the use of any "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce"…

116. An "unfair practice" is defined by Missouri law, 15 CSR 60-8.020, as any practice which:

(A) Either-

1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

2. Is unethical, oppressive or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

117. An "unfair practice is defined by Missouri law, 15 CSR 60-8.020 (1)(B) provides that an "Unfair Practice in General" is

(1) An unfair practice is any practice which –

24

(A) Either –

    1.  <u>Offends any public policy</u> as it has been established by the Constitution, <u>statutes</u> or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

    2.  Is unethical, oppressive or unscrupulous; and

(B) Presents a risk of, or causes, <u>substantial injury to consumers</u>.

15CSR 60-8.040 provides that an "Unfair Practice is:

An unfair practice for any person in connection with the advertisement or sale of merchandise to violate the duty of good faith in solicitation, negotiation and performance, or in <u>any manner fail to act in good faith</u>.

118.    Plaintiff and Defendant are "persons" within the meaning of section 407.010 (5).

119.    Merchandise is defined by the MMPA, to include the providing of "services" and, therefore, encompasses Healthcare services. Healthcare services are a good.

120.    Efforts to maintain the privacy and confidentiality of medical records are part of the healthcare services associated with a good.

121.    Maintenance of medical records are "merchandise" within the meaning of section 407.010(4).

122.    Plaintiff's and the Class Members' goods and services purchased from Defendant were for "personal, family or household purposes" within the meaning of the Missouri Merchandising Practices Missouri Revised Statutes.

123.    As set forth herein, Defendant's acts, practices and conduct violate section 407.010(1) in that, among other things, Defendant has used and/or continues to use unfair practices, concealment, suppression and/or omission of material facts in connection with the

25

advertising, marketing, and offering for sale of services associated with healthcare services. Such acts offends the public policy established by Missouri statute and constitute an "unfair practice" as that term is used in Missouri Revised Statute 407.020(1).

124.    Defendant's unfair, unlawful and deceptive acts, practices and conduct include: (1) representing to its patients that it will not disclose their sensitive personal health information to an unauthorized third party or parties; (2) failing to implement security measures such as securing the records in a safe place; and (3) failing to train personnel.

125.    Defendant's conduct also violates the enabling regulations for the MMPA because it: (1) offends public policy; (2) is unethical, oppressive and unscrupulous; (3) causes substantial injury to consumers; (4) it is not in good faith; (5) is unconscionable; and (6) is unlawful. *See* Mo Code Regs. Ann tit. 15, Section 60-8.

126.    As a direct and proximate cause of Defendant's unfair and deceptive acts, Plaintiff and members of the Class have suffered damages in that they (1) paid more for medical record privacy protections than they otherwise would have, and (2) paid for medical record privacy protections that they did not receive. In this respect, Plaintiff and members of the Class have not received the benefit of the bargain and have suffered an ascertainable loss.

127.    As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

128.    Plaintiff and the other Class Members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii)

improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; and, (vii) emotional distress. At the very least, Plaintiff and the other Class Members are entitled to nominal damages.

129. Plaintiff, on behalf of themselves and the Class, seek actual damages for all monies paid to Defendant in violation of the MMPA. In addition, Plaintiff seeks attorneys' fees.

**COUNT VI**
**NEGLIGENT TRAINING AND SUPERVISION**

130. The preceding factual statements and allegations are incorporated herein by reference.

131. At all times relevant hereto, Defendant owes a duty to Plaintiff and the Class to hire competent employees and agents, and to train and supervise them to ensure they recognize the duties owed to their patients and their parents.

132. Defendant breached its duty to Plaintiff and the member of the Class by allowing its employees and agents to give access to patient medical records to an unauthorized user.

133. As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

134. Plaintiff and the other Class members suffered and will continue to suffer damages including, but not limited to: (i) the untimely and/or inadequate notification of the Breach; (ii)

improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; and, (vii) emotional distress. At the very least, Plaintiff and the other Class Members are entitled to nominal damages.

135. Defendant's wrongful actions and/or inaction and the resulting Breach (as described above) constituted (and continue to constitute) an invasion of Plaintiff's and the other Class Members' privacy by publicly and wrongfully disclosing their private facts (*i.e*., their PHI and PII) without their authorization or consent.

## COUNT VII
## NEGLIGENCE *PER SE*

136. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein

137. Plaintiff was under the medical care of the Defendant.

138. The Defendant is a covered entity for purposes of HIPAA.

139. Plaintiff and the Class Members are members of the class of persons HIPAA and HITECH were created to protect.

140. Plaintiff's and the Class Members' PHI and PII are the type of information HIPAA and HITECH were created to protect. HIPAA and HITECH were created to protect against the wrongful and unauthorized disclosure of an individual's health information.

141. The Defendant gave protected medical information to an unauthorized third party or unauthorized third parties without the written consent or authorization of Plaintiff and the Class Members.

142. The Defendant gave protected medical information to unauthorized third parties without Plaintiff's and the Class Members' oral consent or written authorization.

143. The information disclosed to an unauthorized third party or unauthorized third parties included private health information about medical treatment.

144. The Defendant's disclosure of the PHI and PII of Plaintiff and the Class Members without consent or authorization is a violation of HIPAA and HITECH and is negligence *per se*.

145. Alternatively, Defendant violated HIPAA and HITECH in that it did not reasonably safeguard the private health information of Plaintiff from any intentional or unintentional use or disclosure that is in violation of the standards, implementation specifications or other requirements pursuant to HIPAA and HITECH including, but not limited to, 42 C.F.R. §§ 164.302-164.318, 45 C.F.R. § 164.500, *et seq*, and 42 U.S.C. §17902, and was therefore negligent *per se*.

146. As a direct result of Defendant's negligence, Plaintiffs suffered damages and injuries, including, without limitation, loss of the benefit of their bargain, a reduction in value of their private health information, loss of privacy, loss of medical expenses, loss of trust, loss of confidentiality, embarrassment, humiliation, emotional distress, and loss of enjoyment of life.

147. Plaintiff and the other Class members suffered and will continue to suffer damages including, but not limited to: (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the

29

increased risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; and, (vii) emotional distress. At the very least, Plaintiff and the other Class Members are entitled to nominal damages.

148.    As a direct result of Defendant's negligence, Plaintiff have a significantly increased risk of being future victims of identity theft relative to what would be the case in the absence of the Defendant's wrongful acts.

149.    As a direct result of Defendant's negligence, future monitoring, in the form of identity-theft or related identity protection is necessary in order to properly warn Plaintiffs of, and/or protect Plaintiffs from, being a victim of identity theft or other identity-related crimes.

150.    Plaintiff, individually and on behalf of the Class, seek actual damages for all monies paid to Defendant in violation of the HIPAA and HITECH.  In addition, Plaintiff seeks attorneys' fees.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Petition, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representatives and appointing Plaintiff's counsel as Lead Counsel for the Class;

B.    Declaring that Defendant breached its implied contract with Plaintiff and Class Members;

C.    Declaring that Defendant negligently disclosed Plaintiff's and the Class Members PHI and PII;

D.    Declaring that Defendant has invaded Plaintiff's and Class Members' privacy;

E.    Declaring that Defendant breached its fiduciary duty to Plaintiff and the Class Members;

Electronically Filed - Jackson - Independence - July 25, 2022 - 10:56 AM

F.      Declaring that Defendant breached its implied contract with Plaintiff and the Class Members;

G.      Declaring that Defendant violated the Missouri Merchandising Practices Act;

H.      Declaring that Defendant was negligent by negligently training and supervising its employees and agents;

I.      Ordering Defendant to pay actual damages to Plaintiff and the Class Members;

J.      Ordering Defendant to properly disseminate individualized notice of the Breach to all Class Members;

K.      For an Order enjoining Defendant from continuing to engage in the unlawful business practices alleged herein;

L.      Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff;

M.      Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

N.      Ordering such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff, on behalf of herself and the other Class Members, respectfully demands a trial by jury on all of her claims and causes of action so triable.

Respectfully submitted,

Maureen M. Brady

_____
Maureen M. Brady      MO #57800
Lucy McShane          MO #57957
MCSHANE & BRADY, LLC
1656 Washington Street, Suite 120
Kansas City, MO 64108
Telephone:  (816) 888-8010
Facsimile:  (816) 332-6295
E-mail: mbrady@mcshanebradylaw.com
        lmcshane@mcshanebradylaw.com

Electronically Filed - Jackson - Independence - July 25, 2022 - 10:56 AM

**ATTORNEYS FOR PLAINTIFFS**

Electronically Filed - Jackson - Independence - July 25, 2022 - 10:56 AM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | |
|---|---|
| **B.B. individually and on behalf of all others similarly situated,** | ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| **LINCARE HOLDINGS INC.** | ) |
| **Serve:** | ) |
| **C T CORPORATION SYSTEM** | ) |
| **120 SOUTH CENTRAL AVENUE** | ) |
| **CLAYTON, MO 63105** | ) |
| | ) |
| Defendant. | ) |
| | ) |

Case No:
Division:

## ENTRY OF APPEARANCE

**COMES NOW** Lucy McShane of the law firm of McShane & Brady, LLC, and hereby enters her appearance as counsel on behalf of Plaintiff B.B. individually and on behalf of all others similarly situated in the above-referenced matter.

Respectfully submitted,

*Lucy McShane*

_____
Maureen M. Brady          MO #57800
Lucy McShane               MO #57957
MᴄSʜᴀɴᴇ & Bʀᴀᴅʏ, LLC
1656 Washington Street, Suite 120
Kansas City, Missouri 64108
Telephone:    (816) 888-8010
Facsimile:     (816) 332-6295
E-Mail: mbrady@mcshanebradylaw.com
            lmcshane@mcshanebradylaw.com
**ATTORNEYS FOR PLAINTIFF**

Electronically Filed - Jackson - Independence - July 25, 2022 - 10:56 AM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | |
|---|---|
| B.B. individually and on behalf of all<br>others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>**LINCARE HOLDINGS INC.**<br>**Serve:**<br>**C T CORPORATION SYSTEM**<br>**120 SOUTH CENTRAL AVENUE**<br>**CLAYTON, MO 63105**<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No:<br>) Division:<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ENTRY OF APPEARANCE

**COMES NOW** Maureen M. Brady of the law firm of McShane & Brady, LLC., and hereby

enters her appearance as counsel on behalf of Plaintiff B.B. individually and on behalf of all others

similarly situated in the above-referenced matter.

Respectfully submitted,

*Maureen M. Brady*

_____

Maureen M. Brady MO #57800
Lucy McShane   MO #57957
MᴄSʜᴀɴᴇ & Bʀᴀᴅʏ, LLC
1656 Washington Street, Suite 120
Kansas City, MO 64108
Telephone: (816) 888-8010
Facsimile: (816) 332-6295
E-mail: mbrady@mcshanebradylaw.com
    lmcshane@mcshanebradylaw.com
**ATTORNEYS FOR PLAINTIFFS**

**2216-CV16343**

Electronically Filed - Jackson - Independence - July 25, 2022 - 10:56 AM

### IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
### AT INDEPENDENCE

| | |
|---|---|
| **B.B. individually and on behalf of all others similarly situated,** | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) Case No: |
| | ) Division: |
| **LINCARE HOLDINGS INC.** | ) |
| **Serve:** | ) |
| **C T CORPORATION SYSTEM** | ) |
| **120 SOUTH CENTRAL AVENUE** | ) |
| **CLAYTON, MO 63105** | ) |
| | ) |
| Defendant. | ) |
| | ) |

### DESIGNATION OF LEAD COUNSEL

**COMES NOW** Plaintiff B.B. individually and on behalf of all others similarly situated

and hereby designates Maureen M. Brady of the law firm of McShane & Brady, LLC, as lead

counsel on behalf of Plaintiff B.B., individually and on behalf of all others similarly situated in the

above-referenced matter.

Respectfully submitted,

*Maureen M. Brady*

_____
Maureen M. Brady      MO #57800
Lucy McShane          MO #57957
MCSHANE & BRADY, LLC
1656 Washington Street, Suite 120
Kansas City, MO 64108
Telephone:  (816) 888-8010
Facsimile:  (816) 332-6295
E-mail: mbrady@mcshanebradylaw.com
        lmcshane@mcshanebradylaw.com
**ATTORNEYS FOR PLAINTIFFS**

1

Electronically Filed - Jackson - Independence - July 25, 2022 - 10:56 AM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | | |
|---|---|---|
| **B.B. individually and on behalf of all** | ) | |
| **others similarly situated,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No: |
| | ) | Division: |
| **LINCARE HOLDINGS INC.** | ) | |
| **Serve:** | ) | |
| **C T CORPORATION SYSTEM** | ) | |
| **120 SOUTH CENTRAL AVENUE** | ) | |
| **CLAYTON, MO 63105** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**NOTICE TO TAKE THE DEPOSITION OF DEFENDANTS'
<u>CORPORATE REPRESENTATIVE</u>**

**PLEASE TAKE NOTICE** that in accordance with Mo.R.Civ.P. 57.03 the deposition of a company representative of Defendant Lincare Holdings Inc. (herein after collectively, "Lincare" or the Defendants"), whom Defendant is requested to produce, to be used in evidence in the above-entitled cause on the part of plaintiff will be taken at a mutually agreed upon place on a date and time mutually convenient to the parties and counsel, between the hours of 8:00 o'clock in the forenoon and 6:00 o'clock in the afternoon of that day, and that the taking of the said deposition, if not completed on that day, will be continued from day to day, at the same place and between the same hours until completed. The topics which the representative will be testifying to are as follows:

1.      All policies and procedures of Defendants including the training of employees regarding the maintenance of patients' private health information.

2.      The relationship between Defendants Lincare and Plaintiff.

3.      All the allegations and claims contained in Plaintiff's Petition for Damages.

4.      All responses to discovery propounded to Defendant in this matter.

5.      All investigations and the resulting actions conducted by Defendants Lincare and any governmental department or agency regarding the wrongful disclosure of private health information by Defendants from 2013 through the present.

6.      All policies and procedures regarding actions, investigations, audits, reports, or inquiries conducted by Defendants Lincare into any potential wrongful disclosure of private health information.

7.      All policies and procedures regarding actions, investigations, audits, reports, or inquiries conducted by Defendants Lincare into any violation of the HIPAA statutes made by Defendants.

8.      Plaintiff's medical records wrongfully disclosed to a third party.

9.      The policies and procedures utilized by Defendants regarding employees accessing or disclosing medical records.

10.     All policies and procedures utilized by Defendants from 2013 to the present regarding the actions to discover or investigate a wrongful disclosure of private health information and the actions taken following discovery of the same.

11.     The identity, including name, job title, and job description, of all persons or entities who have knowledge of the facts contained in Plaintiff's Petition for Damages.

12.     All policies and procedures of Defendants Lincare, including the training of employees regarding the maintenance of patients' private health information and compliance with same by Defendants.

13.     All compliance requirements with Federal Statutes and agencies regarding privacy

of patient medical records and Defendants' fulfillment of the same from 2013 to the present.

14.     All defenses asserted by Defendants Lincare in this case.

Respectfully submitted,

*Maureen M. Brady*

_____
Maureen M. Brady      MO #57800
Lucy McShane          MO #57957
MCSHANE & BRADY, LLC
1656 Washington Street, Suite 120
Kansas City, MO 64108
Telephone:  (816) 888-8010
Facsimile:  (816) 332-6295
E-mail: mbrady@mcshanebradylaw.com
          lmcshane@mcshanebradylaw.com
**ATTORNEYS FOR PLAINTIFFS**

Electronically Filed - Jackson - Independence - July 25, 2022 - 10:56 AM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

| | |
|---|---|
| B.B. individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No: ) Division: |
| LINCARE HOLDINGS INC.<br>Serve:<br>C T CORPORATION SYSTEM<br>120 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | ) ) ) ) ) ) |
| Defendant. | ) ) |

**CERTIFICATE OF SERVICE**

**COMES NOW** Plaintiff, by and through counsel, and hereby certifies that copies in paper and electronic format of *Plaintiff's Opening Interrogatories to Defendant* and *Plaintiff's First Requests for Production of Documents to Defendant* were served along with the Petition for Damages in the service packet.

Respectfully submitted,

*Maureen M. Brady*

_____
Maureen M. Brady      MO #57800
Lucy McShane          MO #57957
MᴄSʜᴀɴᴇ & Bʀᴀᴅʏ, LLC
1656 Washington Street, Suite 120
Kansas City, MO 64108
Telephone:  (816) 888-8010
Facsimile:  (816) 332-6295
E-mail: mbrady@mcshanebradylaw.com
        lmcshane@mcshanebradylaw.com
**ATTORNEYS FOR PLAINTIFFS**

Electronically Filed - Jackson - Independence - July 25, 2022 - 10:56 AM

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

| | |
|---|---|
| B.B. individually and on behalf of all others similarly situated, | ) )<br>) |
| Plaintiffs, | ) ) |
| v. | ) ) Case No:<br>) Division: |
| LINCARE HOLDINGS INC.<br>Serve:<br>C T CORPORATION SYSTEM<br>120 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | ) ) ) ) ) ) |
| Defendant. | ) ) |

**MOTION AND ORDER FOR
APPROVAL AND APPOINTMENT OF PRIVATE PROCESS SERVER**

COMES NOW Plaintiff, by and through its attorney of record, and for its Motion for

Approval/Appoint of Private Process Server, and requests that D&B Legal Services, Inc.: Legal

Names (s): who are qualified persons to serve process, are not parties and are not less than eighteen

(18) years of age, as private process servers in the above cause to serve process in this case.

| | | |
|---|---|---|
| Jamie Andrews PPS21-0022 | David Dice PPS21-0032 | William Hockersmith PPS21-0046 |
| Sallie Bailey PPS21-0023 | Maureen Dice PPS21-0033 | Mike Johnson PPS21-0047 |
| Brian Bankowski PPS21-0099 | Norman Diggs PPS21-0125 | Tawanda Johnson PPS21-0048 |
| Dustin Becraft PPS21-0024 | Edwina Ditmore PPS21-0126 | Patrick Jones PPS21-0049 |
| Carrington Bell PPS21-0025 | William Ferrell PPS21-0034 | Wendy Hilgenberg PPS21-0050 |
| Miranda Bergner PPS21-0101 | Robert Finley PPS21-0035 | Brent Kirkhart PPS21-0051 |
| Steven Bergner PPS21-0026 | Ramona Foster PPS21-0132 | Janice Kirkhart PPS21-0052 |
| Thomas Bogue PPS21-0027 | James Frago PPS21-0036 | Tyler Kirkhart PPS21-0053 |
| Mathew Bohrer PPS21-0103 | John Frago PPS21-0037 | Raymond Land PPS21-0162 |
| Arthur Boyer PPS21-0028 | David Garza PPS21-0134 | Bert Lott PPS21-0054 |
| Scott Brady PPS21-0029 | Bradley Gordon PPS21-0038 | Frank Lundien PPS21-0168 |
| Donald Branda PPS21-0104 | Thomas Gorgen PPS21-0039 | Chad Maier PPS21-0170 |
| Jeff Brown PPS21-0030 | Mason Gray PPS21-0140 | Kenneth Marshall PPS21-0171 |
| Randy Burrow PPS21-0107 | Charles Gunning PPS21-0040 | Deborah Martin PPS21-0055 |
| Gary Burt PPS21-0031 | Michael Hancock PPS21-0041 | Michael Martin PPS21-0056 |
| Glen Cobb PPS21-0114 | James Hannah PPS21-0042 | Timothy McLleary PPS21-0057 |
| Norman Collins PPS21-0115 | Rufus Harmon PPS21-0043 | Michael Meador PPS21-0058 |
| Michael Conklin PPS21-0120 | Stephen Heitz PPS21-0044 | Maria Meier PPS21-0059 |
| Lisa Corbett PPS21-0122 | James Hise PPS21-0045 | Heather Merfen PPS21-0060 |

1

Thomas Melte PPS21-0061
Jill Miller PPS21-0178
Michael Miller PPS21-0062
Matthew Millhollin PPS21-0063
Jason Moody PPS21-0064
Jeremy Nicholas PPS21-0065
Michael Noble PPS21-0066
Greg Noll PPS21-0067
Robert Peters PPS21-0193
Carrie Pfeifer PPS21-0068
Craig Poese PPS21-0069
Dee Powell PPS21-0070
Samantha Powell PPS21-0071
William Powell PPS21-0072
Kim Presler PPS21-0073

Marcus Presler PPS21-0074
Mark Rauss PPS21-0075
Jason Rodgers PPS21-0076
Richard Roth PPS21-0077
Edna Russell PPS21-0078
Juan Santos PPS21-0207
Brian Scheer PPS21-0208
Brenda Schiwitz PPS21-0079
Mark Schneider PPS21-0209
Joe Sherrod PPS21-0212
Michael Siegel PPS21-0213
Robert Simpson PPS21-0214
Laura Skinner PPS21-0080
Thomas Skinner PPS21-0081
Richard Skyles PPS21-0082

Anthony Spada PPS21-0083
John Stotler PPS21-0220
Randy Stone PPS21-0219
Sonja Stone PPS21-0218
Lucas Traugott PPS21-0223
Ryan Weekley PPS21-0084
Misty Wege PPS21-0230
Andrew Wheeler PPS21-0085
Pamela Wheetley PPS21-0086
Andrew Wickliffe PPS21-0087
Gregory Willing PPS21-0088
Conni Wilson PPS21-0089
Stan Yoder PPS21-0233
Jacqueline Young PPS21-0090
Greg Zotta PPS21-0091

Respectfully submitted,

_____
Maureen M. Brady     MO #57800
Lucy McShane         MO #57957
MCSHANE & BRADY, LLC
1656 Washington Street, Suite 120
Kansas City, MO 64108
Telephone:  (816) 888-8010
Facsimile:  (816) 332-6295
E-mail: mbrady@mcshanebradylaw.com
        lmcshane@mcshanebradylaw.com
**ATTORNEYS FOR PLAINTIFFS**

2

## **<u>ORDER</u>**

It is hereby ordered that the Plaintiff's Motion for Approval and Appointment of private process server is sustained, and the above-named individual is hereby approved and appointed to serve process in the above-captioned matter.

IT IS HEREBY ORDERED.

07/26/2022
DEPUTY COURT ADMINISTRATOR

3



# IN THE 16TH JUDICIAL CIRCUIT **COURT, JACKSON COUNTY, MISSOURI**

| Judge or Division:<br>JAMES FRANCIS KANATZAR | **Case Number: 2216-CV16343** |
|---|---|
| Plaintiff/Petitioner:<br>B B | Plaintiff's/Petitioner's Attorney/Address<br>LUCY GUYOL MCSHANE<br>1656 WASHINGTON STREET<br>SUITE 120<br>KANSAS CITY, MO  64108 |
| Defendant/Respondent:<br>LINCARE HOLDINGS INC. | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO  64050 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

(vs.)

## Summons in Civil Case

**The State of Missouri to:**  LINCARE HOLDINGS INC.
**Alias:**

CT CORPORATION SYSTEM
120 SOUTH CENTRAL AVENUE
CLAYTON, MO  63105

# PRIVATE PROCESS SERVER

*COURT SEAL OF*

*JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service.  If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

26-JUL-2022
_____
Date

_____
Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:**  Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by:  (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling place or usual abode of the defendant/respondent with _____ a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to

_____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

*(Seal)*          **Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

My commission expires: _____          _____
Date          Notary Public

| Sheriff's Fees | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $    10.00 | |
| Mileage | $_____ | (_____ miles @ $._____ per mile) |
| Total | $_____ | |

A copy of the summons and petition must be served on **each** defendant/respondent.  For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (11/2021) SM30 (JAKSMCC) For Court Use Only: Document 1-1 # 22-SMCC-6282   1  of 1 Civil Procedure Form No. 1; Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:22-cv-00670-FJG   Document 1-1   Filed 10/20/22   Page 44 of 88

# SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org → Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.


Circuit Court of Jackson County

6/2020

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE**

B B,

      **PLAINTIFF(S),**      **CASE NO. 2216-CV16343**

**VS.**               **DIVISION 5**

 **LINCARE HOLDINGS INC.,**

      **DEFENDANT(S).**

**NOTICE OF CASE MANAGEMENT CONFERENCE FOR CIVIL CASE
AND ORDER FOR MEDIATION**

---

   NOTICE IS HEREBY GIVEN that a Case Management Conference will be held with the Honorable **JAMES FRANCIS KANATZAR** on **18-NOV-2022** in **DIVISION 5** at **08:30 AM**. All Applications for Continuance of a Case Management Conference should be filed on or before Wednesday of the week prior to the case management setting. Applications for Continuance of a Case Management Conference shall comply with Supreme Court Rule and 16th Cir. R. 34.1. Continuance of a Case Management Conference will only be granted for good cause shown because it is the desire of the Court to meet with counsel and parties in all cases within the first 4 months that a case has been on file. All counsel and parties are directed to check Case.NET on the 16th Judicial Circuit web site at www.16thcircuit.org after filing an application for continuance to determine whether or not it has been granted.

   A lead attorney of record must be designated for each party as required by Local Rule 3.5.1. A separate pleading designating the lead attorney of record shall be filed by each party as described in Local Rule 3.5.2. The parties are advised that if they do not file a separate pleading designating lead counsel, even in situations where there is only one attorney representing the party, JIS will not be updated by civil records department, and copies of orders will be sent to the address currently shown in JIS. Civil Records does not update attorney information from answers or other pleadings. The Designation of Lead Attorney pleading shall contain the name of lead counsel, firm name, mailing address, phone number, FAX number and E-mail address of the attorney who is lead counsel.

   At the Case Management Conference, counsel should be prepared to address at least the following:

   a.   A trial setting;

   b.   Expert Witness Disclosure Cutoff Date;

   c.   A schedule for the orderly preparation of the case for trial;

   d.   Any issues which require input or action by the Court;

   e.   The status of settlement negotiations.

## MEDIATION

The parties are ordered to participate in mediation pursuant to Supreme Court Rule 17. Mediation shall be completed within 10 months after the date the case if filed for complex cases, and 6 months after the date the case is filed for other circuit cases, unless otherwise ordered by the Court. Each party shall personally appear at the mediation and participate in the process. In the event a party does not have the authority to enter into a settlement, then a representative of the entity that does have actual authority to enter into a settlement on behalf of the party shall also personally attend the mediations with the party.

The parties shall confer and select a mutually agreeable person to act as mediator in this case. If the parties are unable to agree on a mediator the court will appoint a mediator at the Case Management Conference.

Each party shall pay their respective pro-rata cost of the mediation directly to the mediator.

## POLICIES/PROCEDURES

Please refer to the Court's web page www.16thcircuit.org for division policies and procedural information listed by each judge.

/S/ JAMES FRANCIS KANATZAR
JAMES FRANCIS KANATZAR, **Circuit Judge**

Certificate of Service

This is to certify that a copy of the foregoing was electronic noticed, faxed, emailed and/or mailed or hand delivered to the plaintiff with the delivery of the file-stamped copy of the petition. It is further certified that a copy of the foregoing will be served with the summons on each defendant named in this action.

Attorney for Plaintiff(s):
LUCY GUYOL MCSHANE, 1656 WASHINGTON STREET, SUITE 120, KANSAS CITY, MO 64108

Defendant(s):
LINCARE HOLDINGS INC.

Dated: 26-JUL-2022

MARY A. MARQUEZ
Court Administrator

Electronically Filed - Jackson - Independence - July 25, 2022 - 10:56 AM

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

| | |
|---|---|
| B.B. individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No: 2216-CV16343 ) Division: 5 |
| LINCARE HOLDINGS INC. Serve: C T CORPORATION SYSTEM 120 SOUTH CENTRAL AVENUE CLAYTON, MO 63105 | ) ) ) ) ) ) |
| Defendant. | ) ) |

**FILED**
**DIVISION 5**
**29-Jul-2022   16:22**
CIRCUIT COURT OF JACKSON COUNTY, MO
BY _____

## ORDER

On this __29th__ day of ___July___, 20 _22_, this matter is brought before the Court on Plaintiff's Motion to Keep Plaintiff's Identity Private.  Now having reviewed the Motion and being fully advised in the premises the Court hereby GRANTS Plaintiff's Motion.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Plaintiff's Identity will be kept private and within the confines of this litigation and that her name shall not be used in any pleadings or other documents filed with the Court.

Date: __29 July 2022__

_____
Judge of the Circuit Court

Respectfully submitted,

*Maureen M. Brady*

_____
Maureen M. Brady      MO #57800
Lucy McShane           MO #57957
MᴄSʜᴀɴᴇ & Bʀᴀᴅʏ, LLC
1656 Washington Street, Suite 120
Kansas City, MO 64108
Telephone:  (816) 888-8010
Facsimile:  (816) 332-6295
E-mail: mbrady@mcshanebradylaw.com
        lmcshane@mcshanebradylaw.com

**ATTORNEYS FOR PLAINTIFFS**

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

| | |
|---|---|
| **B.B. individually and on behalf of all** <br> **others similarly situated,** | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | )    Case No: <br> )    Division: |
| **LINCARE INC.** <br> **Serve:** <br> **C T CORPORATION SYSTEM** <br> **120 SOUTH CENTRAL AVENUE** <br> **CLAYTON, MO 63105** | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| Defendant. | ) <br> ) |

## FIRST AMENDED CLASS ACTION PETITION FOR DAMAGES

COMES NOW ("Plaintiff"), individually and on behalf of all Missouri citizens who are

similarly situated for her First Amended Class Action Petition for Damages against Defendant

Lincare Inc. (hereinafter sometimes referred to as "Defendant Lincare", "Lincare", respectfully

states and alleges as follows:

## NATURE OF THE CASE

1.      This is a class action brought by Plaintiff, individually and on behalf of all

citizens who are similarly situated (*i.e.*, the Class Members), seeking to redress Defendant's

willful and reckless violations of her privacy rights.  Plaintiff and the other Class Members are

patients of Lincare who entrusted their Protected Health Information ("PHI") and Personally

Identifiable Information ("PII") to Lincare.  Defendant Lincare has shared Plaintiffs' PHI and PII

with persons who are not authorized to have said PHI and PII.  Defendant betrayed Plaintiffs'

trust by failing to properly safeguard and protect their PHI and PII and publicly disclosing their

PHI and PII without authorization in violation of Missouri common law.

2.     This action pertains to Defendant's unauthorized disclosure of the Plaintiffs' PHI and PII that occurred September 26, 2021 (the "Breach").

3.     Defendant disclosed Plaintiff's and the other Class Members' PHI and PII to unauthorized persons as a direct and/or proximate result of Defendant's failure to safeguard and protect their PHI and PII.

4.     The wrongfully disclosed PHI and PII included, *inter alia*, Plaintiff's and the other Class Members' name, Social Security Number, physical address, date of birth, telephone number, and medical condition and diagnosis.

5.     Defendant flagrantly disregarded Plaintiff's and the other Class Members' privacy and property rights by recklessly failing to take the necessary precautions required to safeguard and protect Plaintiff's and the other Class Members' PHI and PII from unauthorized disclosure. Plaintiff's and the other Class Members' PHI and PII was improperly handled, inadequately protected, readily able to be copied by thieves and not kept in accordance with basic security protocols. Defendant's obtaining of the information and sharing of same also represent a flagrant disregard of Plaintiff's and the other Class Members' rights, both as to privacy and property.

6.     Plaintiff has standing to bring this action because as a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Breach, Plaintiff has incurred (and will continue to incur) damages in the form of, *inter alia*, (i) loss of privacy and/or (ii) the additional damages set forth in detail below, which are incorporated herein by reference.

7.     Defendant's wrongful actions and/or inaction and the resulting Breach have also placed Plaintiff and the other Class Members at an imminent, immediate and continuing increased risk of identity theft, identity fraud and medical fraud. Indeed, Javelin Strategy & Research ("Javelin"), a leading provider of quantitative and qualitative research, released its

2

2012 Identity Fraud Report ("the Javelin Report"), quantifying the impact of data breaches. According to the Javelin Report, individuals whose PHI and PII is subject to a reported data breach—such as the Data Breach at issue here—are approximately 9.5 times more likely than the general public to suffer identity fraud and/or identity theft. Moreover, there is a high likelihood that significant identity fraud and/or identity theft has not yet been discovered or reported, and a high probability that criminals who may now possess Plaintiff's and the other Class Members' PHI and PII and not yet used the information will do so at a later date or re-sell it.

8. Plaintiff and the Class members have also suffered and are entitled to damages for the lost benefit of their bargain with Defendant Lincare. Plaintiff and members of the Class paid Lincare for its services including them protecting their PHI and PII. The lost benefit of the bargain is measured by the difference between the value of what Plaintiff and the members of the Class should have received when they paid for their services, and the value of what they actually did receive; services without adequate privacy safeguards. Plaintiff and members of the Class have been harmed in that they (1) paid more for privacy and confidentiality than they otherwise would have, and (2) paid for privacy protections they did not receive. In that respect, Plaintiff and the members of the Class have not received the benefit of the bargain and have suffered an ascertainable loss.

9. Additionally, because of Defendant's conduct, Plaintiff and members of the Class have been harmed in that Defendant has breached its common law fiduciary duty of confidentiality owed to Plaintiff and member of the Class.

10. Accordingly, Plaintiff and the other Class Members seek redress against Defendants for breach of implied contract, breach of contract, invasion of privacy by the public

3

disclosure of private facts, common law negligence, negligent training and supervision, and breach of fiduciary duty of confidentiality.

11.    Plaintiff, individually and on behalf of the other Class Members, seeks all (i) actual damages, economic damages, and/or nominal damages, (ii) injunctive relief, and (iii) attorneys' fees, litigation expenses, and costs.

<u>**JURISDICTION AND VENUE**</u>

12.    The Court has jurisdiction over the parties and the subject matter of this action. Jurisdiction is proper because both Plaintiff and Defendant are citizens of the State of Missouri and Defendant is a business operating, and licensed under, the laws of the state of Missouri.

13.    Venue is proper in Independence, Jackson County, Missouri, pursuant to RSMo §508.010 because the acts complained of occurred in Blue Springs, Jackson County, Missouri.

<u>**PARTIES**</u>

14.    Plaintiff is an adult residing in Blue Springs, Jackson County, Missouri.

15.    Defendant Lincare is, upon information and belief, a Missouri Corporation with its headquarters in Clayton, St. Louis County, Missouri. Defendant can be served at its Registered Address at 120 South Central Avenue, Clayton, Missouri 63105.

<u>**BACKGROUND FACTS**</u>

16.    Certain allegations are made upon information and belief.

17.    Defendant Lincare is a health care provider pursuant to state and federal law, providing health care and medical services to the general public, operating at 2800 US-40 Highway, Blue Springs, Jackson County, Missouri.

18.    As a part of its business operations, Defendant collects and maintains PHI and PII of its patients.

19.     Plaintiffs were patients of Defendant and, as a result, provided their PHI and PII to Defendant.

20.     Plaintiffs entered into an implied contract with Defendant for the adequate protection of their PHI and PII.

21.     Defendants are required to maintain the strictest privacy and confidentiality of Plaintiff and the proposed Class Members' medical records and other PHI and PII.

22.     Defendant posts its privacy practices online, at

https://www.lincare.com/en/policies/privacy

23.     Had Defendant informed Plaintiffs that it would not protect Plaintiffs' privacy, Plaintiffs would have sought treatment elsewhere.

24.     On June 21, 2022 Defendant sent a letter to Plaintiff and members of the proposed Class to inform them of a wrongful disclosure of health information incident that impacted their PHI and PII.

25.     According to the letter, "On September 26, 2021, Lincare identified unusual activity on certain systems within its network…"

26.     Further, the June 21st letter stated that Plaintiffs' and the Class Members' PHI and PII was first accessed on September 10, 2021; the infiltration was identified on September 26, 2021; and, the infiltrator(s) were not blocked until September 29, 2021.

27.     Third parties enjoyed unfettered access to Plaintiff's and the Class Members' PHI and PII for over three weeks without being stopped.

28.     The information that was contained in the files were names, social security numbers, physical addresses, dates of birth, telephone numbers, dates of service and medical conditions, treatment and diagnoses.

5

29.     As a result of the disclosure, Defendant recommended that Plaintiffs monitor their credit reports and take further action related to personal and financial information.

30.     The disclosure of the PHI and PII at issue was a result of the Defendant's inadequate safety and security protocols governing PHI and PII.

31.     The wrongfully disclosed PHI and PII included, *inter alia*, Plaintiff's and the other Class Members' name, Social Security Number, physical address, date of birth, telephone numbers, and medical condition, treatment and diagnosis.

32.     Upon information and belief, the Breach affected tens of thousands of Defendant's patients.

33.     As a direct and/or proximate result of Defendant's failure to properly safeguard and protect the PHI and PII of its patients, Plaintiff's and the other Class Members' PHI and PII was stolen, compromised and wrongfully disseminated without authorization.

34.     Defendant had a duty to its patients to protect them from wrongful disclosures.

35.     As a health care provider, Defendant is required to train and supervise its employees regarding the policies and procedures as well as the State and Federal laws for safeguarding patient information.

36.     The timing of the June 21, 2022 notice letter was well beyond the time frame required by applicable laws.

37.     Defendant is a covered entity pursuant to the Health Insurance Portability and Accountability Act ("HIPAA"). *See* 45 C.F.R. § 160.102. Defendant must therefore comply with the HIPAA Privacy Rule and Security Rule. *See* 45 C.F.R. Part 160 and Part 164, Subparts A through E.

6

38.     Defendant is a covered entity pursuant to the Health Information Technology Act ("HITECH")[1]. *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

39.     The HIPAA and HITECH rules work in conjunction with the already established laws of privacy Missouri.  HIPAA and HITECH do not recognize an individual right of claim for violation but provide the guidelines for the standard of procedure dictating how patient medical information should be kept private.

40.     HIPAA's Privacy Rule, otherwise known as "Standards for Privacy of Individually Identifiable Health Information," establishes national standards for the protection of health information.

41.     HIPAA's Security Rule, otherwise known as "Security Standards for the Protection of Electronic Protected Health Information," establishes national security standards for the protection of health information that is held or transferred in electronic form. See 42 C.F.R. §§ 164.302-164.318.

42.     HIPAA limits the permissible uses of "protected health information" and prohibits the unauthorized disclosure of "protected health information." 45 C.F.R. § 164.502. HIPAA requires that covered entities implement appropriate administrative, technical, and physical safeguards for this information and requires that covered entities reasonably safeguard protected health information from any intentional or unintentional use or disclosure that is in violation of the standards, implementation specifications or other requirements of this subpart. *See* 45 C.F.R. § 164.530(c).

43.     HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the

---

[1] HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. *See* 45 C.F.R. §

164.530(e).

44.     HIPAA requires a covered entity to mitigate, to the extent practicable, any

harmful effect that is known to the covered entity of a use or disclosure of protected health

information in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164,

Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

45.     Under HIPAA:

> Protected health information means individually identifiable health information:
>
> (1) Except as provided in paragraph (2) of this definition, that is:
>
> (i) Transmitted by electronic media;
>
> (ii) Maintained in electronic media; or
>
> (iii) Transmitted or maintained in any other form or medium.[2]

46.     HIPAA and HITECH obligated Defendant to implement technical policies and

procedures for electronic information systems that maintain electronic protected health

information so that such systems were accessible only to those persons or software programs that

had been granted access rights and who have a working need to access and view the information.

*See* 45 C.F.R. § 164.312(a)(1); *see also* 42 U.S.C. §17902.

47.     HIPAA and HITECH also obligated Defendant to implement policies and

procedures to prevent, detect, contain, and correct security violations, and to protect against uses

or disclosures of electronic protected health information that are reasonably anticipated but not

permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42

U.S.C. §17902.

---

[2] 45 C.F.R. § 160.103

48.     HIPAA further obligated Defendant to ensure that its workforce complied with HIPAA security standard rules (*see* 45 C.F.R. § 164.306(a)(4)) to effectively train its workforces on the policies and procedures with respect to protected health information, as necessary and appropriate for those individuals to carry out their functions and maintain the security of protected health information. *See* 45 C.F.R. § 164.530(b)(1).

49.     HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. *See* 45 C.F.R. §§ 164.302-164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." *See* US Department of Health & Human Services, Security Rule Guidance Material.[3] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." *See* US Department of Health & Human Services, Guidance on Risk Analysis.[4]

50.     Should a health care provider experience an unauthorized disclosure, it is required to conduct a Four Factor Risk Assessment (HIPAA Omnibus Rule).  This standard requires, "A covered entity or business associate must now undertake a four-factor risk assessment to determine whether or not PHI has been compromised and overcome the presumption that the breach must be reported.  The four-factor risk assessment focuses on:

---

[3] http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html
[4] https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html

(1) the nature and extent of the PHI involved in the incident (e.g., whether the incident involved sensitive information like social security numbers or infectious disease test results);

(2) the recipient of the PHI;

(3) whether the PHI was actually acquired or viewed; and

(4) the extent to which the risk that the PHI was compromised has been mitigated following unauthorized disclosure (e.g., whether it was immediately sequestered and destroyed)."[5]

51.     The HIPAA Breach Notification Rule, 45 CFR §§ 164.400-414, requires HIPAA covered entities and their business associates to provide notification following a breach of unsecured protected health information.

52.     The HIPAA Contingency Operations Rule, 45 C.F.R. §164.301(a), requires a healthcare provider to have security measures in place and train its employees and staff so that all its staff and employees know their rolls in facility security.

53.     Defendant failed to provide proper notice to Plaintiff of the disclosure.

54.     Defendant failed to conduct or improperly conducted the four-factor risk assessment following the unauthorized disclosure.

55.     As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Breach, the criminal(s) and/or their customers now have Plaintiff's and the other Class Members' compromised PHI and PII.

56.     There is a robust international market for the purloined PHI and PII, specifically medical information.  Defendant's wrongful actions and/or inaction and the resulting Breach

---

[5] 78 Fed. Reg. 5641-46, *See also*, 45 C.F.R. §164.304

have also placed Plaintiff and the other Class Members at an imminent, immediate and continuing increased risk of identity theft, identity fraud[6] and medical fraud.

57.     Identity theft occurs when someone uses an individual's PHI and PII, such as the person's name, Social Security number, or credit card number, without the individual's permission, to commit fraud or other crimes. *See* Federal Trade Commission, Fighting Back against Identity Theft, http://www.ftc.gov/bcp/edu/microsites/idtheft/consumers/ about-identity-theft.html (last visited Jan. 18, 2013).  The Federal Trade Commission estimates that the identities of as many as nine million Americans are stolen each year. *Id.*

58.     The Federal Trade Commission correctly sets forth that "Identity theft is serious. While some identity theft victims can resolve their problems quickly, others spend hundreds of dollars and many days repairing damage to their good name and credit record. Some consumers victimized by identity theft may lose out on job opportunities, or be denied loans for education, housing or cars because of negative information on their credit reports. In rare cases, they may even be arrested for crimes they did not commit." *Id.*

59.     Identity theft crimes often involve more than just crimes of financial loss, such as various types of government fraud (such as obtaining a driver's license or official identification card in the victim's name but with their picture), using a victim's name and Social Security number to obtain government benefits and/or filing a fraudulent tax return using a victim's information.  Identity thieves also obtain jobs using stolen Social Security numbers, rent houses and apartments and/or obtain medical services in a victim's name.  Identity thieves also have

---

[6] According to the United States Government Accounting Office (GAO), the terms "identity theft" or "identity fraud" are broad terms encompassing various types of criminal activities.  Identity theft occurs when PII is used to commit fraud or other crimes. These crimes include, *inter alia,* credit card fraud, phone or utilities fraud, bank fraud and government fraud (theft of government services).

11

been known to give a victim's PHI and PII to police during an arrest, resulting in the issuance of an arrest warrant in the victim's name and an unwarranted criminal record.

60.     According to the FTC, "the range of privacy-related harms is more expansive than economic or physical harm or unwarranted intrusions and that any privacy framework should recognize additional harms that might arise from unanticipated uses of data."[7]  Furthermore, "there is significant evidence demonstrating that technological advances and the ability to combine disparate pieces of data can lead to identification of a consumer, computer or device even if the individual pieces of data do not constitute PII."[8]

61.     According to the Javelin Report, in 2011, the mean consumer cost of rectifying identity fraud was $354 while the mean resolution time of identity fraud was 12 hours.  *Id.* at 6. In 2011, the consumer cost for new account fraud and existing non-card fraud increased 33% and 50% respectively.  *Id.* at 9.   Consumers who received a data breach notification had a fraud incidence rate of 19% in 2011 and, of those experiencing fraud, 43% reported their credit card numbers were stolen and 22% of the victims reported their debit card numbers were stolen.  *Id.* at 10.  More important, consumers who were notified that their PHI and PII had been breached were 9.5 times more likely to experience identity fraud than consumers who did not receive such a notification. *Id.* at 39.

62.     The unauthorized disclosure of a person's Social Security number can be particularly damaging since Social Security numbers cannot be easily replaced like a credit card or debit card.  In order to obtain a new Social Security number, a person must show evidence that

---

[7]   *Protecting Consumer Privacy in an Era of Rapid Change* FTC, Report March 2012 (http://www.ftc.gov/os/2012/03/120326privacyreport.pdf).
[8] *Protecting Consumer Privacy in an Era of Rapid Change: A Proposed Framework for Businesses and Policymakers*, *Preliminary FTC Staff Report*, 35-38 (Dec. 2010), *available at* http://www.ftc.gov/os/2010/12/101201privacyreport.pdf; *Comment of Center for Democracy & Technology,* cmt. #00469, at 3; *Comment of Statz, Inc.*, cmt. #00377, at 11-12.

someone is using the number fraudulently or is being disadvantaged by the misuse. *See* Identity Theft and Your Social Security Number, SSA Publication No. 05-10064, October 2007*, ICN 46327 (http://www.ssa.gov/pubs/10064.html).* Thus, a person whose PHI and/or PII has been stolen cannot obtain a new Social Security number until the damage has already been done.

63.     Obtaining a new Social Security number also is not an absolute prevention against identity theft. Government agencies, private businesses and credit reporting companies likely still have the person's records under the old number, so using a new number will not guarantee a fresh start. For some victims of identity theft, a new number may actually create new problems; because prior positive credit information is not associated with the new Social Security number, it is more difficult to obtain credit due to the absence of a credit history.

64.     Medical fraud (or medical identity theft) occurs when a person's personal information is used without authorization to obtain, or receive payment for, medical treatment, services or goods. *See* www.ftc.gov/bcp/edu/microsites/idtheft/consumers/resolving-specific-id-theft-problems.html. For example, as of 2010, more than 50 million people in the United States did not have health insurance according to the U.S. census. This, in turn, has led to a surge in medical identity theft as a means of fraudulently obtaining medical care. "Victims of medical identity theft [also] may find that their medical records are inaccurate, which can have a serious impact on their ability to obtain proper medical care and insurance benefits." *Id.*

65.     In its letter to Plaintiff and the Class Members, Defendant admits that at least part of the harm and damages suffered by Plaintiff and the Class Members is the present and future risk of identify theft and medical fraud.

66.     Defendant flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy and property rights, and harmed them in the process, by not obtaining

13

Plaintiff's and the other Class Members' prior written consent to disclose their PHI and PII to any other person—as required by laws, regulations, industry standards and/or internal company standards.

67.     Defendant flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy and property rights, and harmed them in the process, by failing to safeguard and protect and, in fact, wrongfully disseminating Plaintiff's and the other Class Members' PHI and PII to unauthorized persons.

68.     Upon information and belief, Defendant flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy and property rights, and harmed them in the process, by failing to keep or maintain an accurate accounting of the PHI and PII wrongfully disclosed in the Breach.

69.     Defendant flagrantly disregarded and/or violated Plaintiff's and the other Class Members' privacy rights, and harmed them in the process, by failing to establish and/or implement appropriate administrative, technical and/or physical safeguards to ensure the security and confidentiality of Plaintiff's and the other Class Members' PHI and PII to protect against anticipated threats to the security or integrity of such information.  Defendant's unwillingness or inability to establish and maintain the proper information security procedures and controls is an abuse of discretion and confirms its intentional and willful failure to observe procedures required by law, industry standards and/or their own internal policies and procedures.

70.     The actual harm and adverse effects to Plaintiff and the other Class Members, including, without limitation, the imminent, immediate and continuing increased risk of harm for identity theft, identity fraud and/or medical fraud directly and/or proximately caused by Defendant's above wrongful actions and/or inaction and the resulting Breach requires Plaintiff

14

and the other Class Members to take affirmative acts to recover their peace of mind, and personal security including, without limitation, purchasing credit reporting services, purchasing credit monitoring and/or internet monitoring services, frequently obtaining, purchasing and reviewing credit reports, bank statements, and other similar information, instituting and/or removing credit freezes and/or closing or modifying financial accounts—for which there is a financial and temporal cost. Plaintiff and the other Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

71. Victims and potential victims of identity theft, identity fraud and/or medical fraud—such as Plaintiff and the other Class Members—typically spend hundreds of hours in personal time and hundreds of dollars in personal funds to resolve credit and other financial issues resulting from data breaches. *See Defend: Recover from Identity Theft*, http://www.ftc.gov/bcp/edu/microsites/idtheft//consumers/defend.html; *Fight Identity Theft*, www.fightidentitytheft.com. According to the Javelin Report, not only is there a substantially increased risk of identity theft and identity fraud for data breach victims, those who are further victimized by identity theft or identity fraud will incur an average fraud-related economic loss of $1,513 and incur an average of $354 of out-of-pocket expenses attempting to rectify the situation. *Id*. at 6.

72. Other statistical analyses are in accord. The GAO found that identity thieves use PHI and PII to open financial accounts and payment card accounts and incur charges in a victim's name. This type of identity theft is the "most damaging" because it may take some time for the victim to become aware of the theft, in the meantime causing significant harm to the victim's credit rating and finances. Moreover, unlike other PHI and PII, Social Security numbers are incredibly difficult to change and their misuse can continue for years into the future. The

GAO states that victims of identity theft face "substantial costs and inconvenience repairing damage to their credit records," as well the damage to their "good name."

73.     The actual harm and adverse effects to Plaintiff and the Class Members, including the imminent, immediate and continuing increased risk of harm for further disclosure of Plaintiff's and the Class Members' PHI and PII caused by Defendant's above wrongful actions and/or inaction and the resulting Breach requires Plaintiffs and the Class Members to take affirmative acts to recover their peace of mind, and personal security including.  Plaintiff and the Class Members have suffered, and will continue to suffer, such damages for the foreseeable future.

74.     As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the Class Members' confidential medical information, Plaintiff and the Class Members suffered damages, including, without limitation, emotional distress, loss of the benefit of the bargain, exposure to heightened future risk of further disclosure, identity theft and medical fraud, loss of privacy, confidentiality, embarrassment, humiliation and loss of enjoyment of life.

75.     Defendant's wrongful actions and/or inaction directly and/or proximately caused the theft and dissemination into the public domain of Plaintiff's and the other Class Members' PHI and PII without their knowledge, authorization and/or consent.  As a direct and/or proximate result of Defendant's wrongful actions and/or inaction and the resulting Breach, Plaintiff and the other Class Members have incurred (and will continue to incur) damages in the form of, *inter alia*, (i) loss of privacy, (ii) the imminent, immediate and continuing increased risk of identity theft, identity fraud and/or medical fraud, (iii) out-of-pocket expenses to purchase credit monitoring, internet monitoring, identity theft insurance and/or other Breach risk mitigation

products, (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft, identity fraud and/or medical fraud pressed upon them by the Breach, including the costs of placing a credit freeze and subsequently removing a credit freeze, (v) the value of their time spent mitigating the increased risk of identity theft, identity fraud and/or medical fraud pressed upon them by the Breach and (vi) the lost benefit of their bargain when they paid for their privacy to be protected and it was not.

## CLASS ACTION ALLEGATIONS

76. Pursuant to Rule 52.08 of the Missouri Rules of Civil Procedure, Plaintiff brings this class action as a class action on behalf of herself and the following Class of Missouri citizens who are similarly situated individuals:

> **All Missouri citizens of Defendant since September 26, 2016 and whose PHI and/or PII was disclosed by Defendant to unauthorized third parties.**

77. On information and belief, the putative Class is comprised of tens of thousands of individuals making joinder impracticable. Disposition of this matter as a class action will provide substantial benefits and efficiencies to the Parties and the Court.

78. The rights of Plaintiff and each other Class Member were violated in a virtually identical manner as a direct and/or proximate result of Defendant's willful, reckless and/or negligent actions and/or inaction and the resulting Breach.

79. Questions of law and fact common to all Class Members exist and predominate over any questions affecting only individual Class Members including, *inter alia*:

> a) Whether Defendant willfully, recklessly and/or negligently failed to maintain and/or execute reasonable procedures designed to prevent unauthorized access to Plaintiff's and the other Class Members' PHI and/or PII;

17

Electronically Filed - Jackson - Independence - September 09, 2022 - 03:56 PM

b)      Whether Defendant was negligent in failing to properly safeguard and protect Plaintiff's and the other Class Members' PHI and/or PII;

c)      Whether Defendant owed a duty to Plaintiff and the other Class Members to exercise reasonable care in safeguarding and protecting their PHI and/or PII;

d)      Whether Defendant breached its duty to exercise reasonable care in failing to safeguard and protect Plaintiff's and the other Class Members' PHI and/or PII;

e)      Whether Defendant was negligent in failing to safeguard and protect Plaintiff's and the other Class Members' PHI and/or PII;

f)      Whether, by publicly disclosing Plaintiff's and the other Class Members' PHI and/or PII without authorization, Defendant invaded their privacy; and

g)      Whether Plaintiff and the other Class Members sustained damages as a result of Defendant's failure to safeguard and protect their PHI and/or PII.

80.     Plaintiff and her counsel will fairly and adequately represent the interests of the other Class Members.  Plaintiff has no interests antagonistic to, or in conflict with, the other Class Members' interests.  Plaintiff's lawyers are highly experienced in the prosecution of consumer class action and data breach cases.

81.     Plaintiff's claims are typical of the other Class Members' claims in that Plaintiff's claims and the other Class Members' claims all arise from Defendant's failure to properly safeguard and protect their PHI and PII.

82.     A class action is superior to all other available methods for fairly and efficiently adjudicating Plaintiff's and the other Class Members' claims.  Plaintiff and the other Class Members have been harmed as a result of Defendant's wrongful actions and/or inaction and the resulting Breach.  Litigating this case as a class action will reduce the possibility of repetitious litigation relating to Defendant's conduct.

18

83.     Class certification, therefore, is appropriate pursuant to Missouri Rule 52.08(b)(3) because the above common questions of law or fact predominate over any questions affecting individual Class Members, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

84.     Class certification also is appropriate pursuant to Missouri Rule 52.08(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

85.     The expense and burden of litigation would substantially impair the ability of Class Members to pursue individual lawsuits in order to vindicate their rights.  Absent a class action, Defendant will retain the benefits of its wrongdoing despite its serious violations of the law.

## COUNT I
## BREACH OF IMPLIED CONTRACT

86.     The preceding factual statements and allegations are incorporated herein by reference.

87.     Plaintiff and the other Class Members, as part of their agreement with Defendant, provided Defendant their PHI and PII.

88.     In providing such PHI and PII, Plaintiff and the other Class Members entered into an implied contract with Defendant, whereby Defendant became obligated to reasonably safeguard Plaintiff's and the other Class members' PHI and PII.

89.     Under the implied contract, Defendant was obligated to not only safeguard the PHI and PII, but also to provide Plaintiff and Class Members with prompt, adequate notice of any Data Breach or unauthorized access of said information.

90.     Defendant breached the implied contract with Plaintiff and the other Class Members by failing to take reasonable measures to safeguard their PHI and PII.

19

91.     As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

92.     Plaintiff and the other Class Members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; and, (vii) emotional distress. At the very least, Plaintiff and Class members are entitled to nominal damages.

**COUNT II**
**NEGLIGENCE**

93.     The preceding factual statements and allegations are incorporated herein by reference.

94.     Defendant owed, and continues to owe, a duty to Plaintiff and the other Class Members to safeguard and protect their PHI and PII.

95.     Defendant breached its duty by failing to exercise reasonable care and failing to safeguard and protect Plaintiff's and the other Class Members' PHI and PII.

96.     It was reasonably foreseeable that Defendant's failure to exercise reasonable care in safeguarding and protecting Plaintiff's and the other Class Members' PHI and PII would result in an unauthorized third party gaining access to such information for no lawful purpose.

20

97. As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

98. Plaintiff's and the other Class members suffered and will continue to suffer damages including, but not limited to: (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; and, (vii) emotional distress. At the very least, Plaintiff and the other Class members are entitled to nominal damages.

99. Defendant's wrongful actions and/or inaction and the resulting Breach (as described above) constituted (and continue to constitute) negligence at common law.

**COUNT III**
**INVASION OF PRIVACY BY PUBLIC DISCLOSURE OF PRIVATE FACTS**

100. The preceding factual statements and allegations are incorporated herein by reference.

101. Plaintiff's and the other Class Members' PHI and PII was (and continues to be) sensitive and personal private information.

102.    By virtue of Defendant's failure to safeguard and protect Plaintiff's and the other Class Members' PHI and PII and the resulting Breach, Defendant wrongfully disseminated Plaintiff's and the other Class Members' PHI and PII to unauthorized persons.

103.    Dissemination of Plaintiff's and the other Class Members' PHI and PII is not of a legitimate public concern; publicity of their PHI and PII was, is and will continue to be offensive to Plaintiff, the other Class Members and all reasonable people. The unlawful disclosure of same violates public mores.

104.    As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

105.    Plaintiff and the other Class members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; and, (vii) emotional distress. At the very least, Plaintiff and the other Class Members are entitled to nominal damages.

106.    Defendant's wrongful actions and/or inaction and the resulting Breach (as described above) constituted (and continue to constitute) an invasion of Plaintiff's and the other

22

Class Members' privacy by publicly and wrongfully disclosing their private facts (*i.e.*, their PHI and PII) without their authorization or consent.

**COUNT IV**
**BREACH OF FIDUCIARY DUTY OF CONFIDENTIALITY**

107.    The preceding factual statements and allegations are incorporated herein by reference.

108.    At all times relevant hereto, Defendant owed, and owes, a fiduciary duty to Plaintiff and the proposed class pursuant to Missouri common law, to keep Plaintiff's medical and other PHI and PII information confidential.

109.    The fiduciary duty of privacy imposed by Missouri law is explicated under the procedures set forth in the Health Insurance Portability and Accountability Act Privacy Rule, including, without limitation the procedures and definitions of 45 C.F.R. §160.103 and 45 C.F.R. §164.530 which requires a covered entity, health care provider, to apply appropriate administrative, technical, and physical safeguards to protect the privacy of patient medical records.

110.    Defendant breached its fiduciary duty to Plaintiff by disclosing Plaintiff and the other Class Members PHI and PII to unauthorized third parties.

111.    As a direct result of Defendant's breach of fiduciary duty of confidentiality and the disclosure of Plaintiff's confidential medical information, Plaintiff and the proposed Class Members suffered damages.

112.    As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of

23

the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

113.    Plaintiff and the other Class Members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; and, (vii) emotional distress.  At the very least, Plaintiff and the other Class Members are entitled to nominal damages.

## COUNT V
## VIOLATIONS OF MISSOURI MERCHANDISING PRACTICES ACT, MO. REV. STAT. § 407.010 et seq.

114.    The preceding factual statements and allegations are incorporated herein by reference.

115.    RSMo. 407.020 prohibits the use of any "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce"…

116.    An "unfair practice" is defined by Missouri law, 15 CSR 60-8.020, as any practice which:

(A) Either-

1. Offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

2. Is unethical, oppressive or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

117.    An "unfair practice is defined by Missouri law,

15 CSR 60-8.020 (1)(B) provides that an "Unfair Practice in General" is

(1) An unfair practice is any practice which –

(A) Either –

1. Offends any public policy as it has been established by the Constitution, statutes
   or common law of this state, or by the Federal Trade Commission, or its
   interpretive decisions; or

2. Is unethical, oppressive or unscrupulous; and

(B) Presents a risk of, or causes, substantial injury to consumers.

15CSR 60-8.040 provides that an "Unfair Practice is:

An unfair practice for any person in connection with the advertisement or sale of merchandise to

violate the duty of good faith in solicitation, negotiation and performance, or in any manner fail

to act in good faith.

118.    Plaintiff and Defendant are "persons" within the meaning of section 407.010 (5).

119.    Merchandise is defined by the MMPA, to include the providing of "services" and,

therefore, encompasses Healthcare services.  Healthcare services are a good.

120.    Efforts to maintain the privacy and confidentiality of medical records are part of

the healthcare services associated with a good.

121.    Maintenance of medical records are "merchandise" within the meaning of section

407.010(4).

122.     Plaintiff's and the Class Members' goods and services purchased from Defendant were for "personal, family or household purposes" within the meaning of the Missouri Merchandising Practices Missouri Revised Statutes.

123.     As set forth herein, Defendant's acts, practices and conduct violate section 407.010(1) in that, among other things, Defendant has used and/or continues to use unfair practices, concealment, suppression and/or omission of material facts in connection with the advertising, marketing, and offering for sale of services associated with healthcare services. Such acts offends the public policy established by Missouri statute and constitute an "unfair practice" as that term is used in Missouri Revised Statute 407.020(1).

124.     Defendant's unfair, unlawful and deceptive acts, practices and conduct include: (1) representing to its patients that it will not disclose their sensitive personal health information to an unauthorized third party or parties; (2) failing to implement security measures such as securing the records in a safe place; and (3) failing to train personnel.

125.     Defendant's conduct also violates the enabling regulations for the MMPA because it: (1) offends public policy; (2) is unethical, oppressive and unscrupulous; (3) causes substantial injury to consumers; (4) it is not in good faith; (5) is unconscionable; and (6) is unlawful. *See* Mo Code Regs. Ann tit. 15, Section 60-8.

126.     As a direct and proximate cause of Defendant's unfair and deceptive acts, Plaintiff and members of the Class have suffered damages in that they (1) paid more for medical record privacy protections than they otherwise would have, and (2) paid for medical record privacy protections that they did not receive.  In this respect, Plaintiff and members of the Class have not received the benefit of the bargain and have suffered an ascertainable loss.

26

127. As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

128. Plaintiff and the other Class Members suffered and will continue to suffer damages including, but not limited to: (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; and, (vii) emotional distress. At the very least, Plaintiff and the other Class Members are entitled to nominal damages.

129. Plaintiff, on behalf of themselves and the Class, seek actual damages for all monies paid to Defendant in violation of the MMPA. In addition, Plaintiff seeks attorneys' fees.

## COUNT VI
## NEGLIGENT TRAINING AND SUPERVISION

130. The preceding factual statements and allegations are incorporated herein by reference.

131. At all times relevant hereto, Defendant owes a duty to Plaintiff and the Class to hire competent employees and agents, and to train and supervise them to ensure they recognize the duties owed to their patients and their parents.

132. Defendant breached its duty to Plaintiff and the member of the Class by allowing its employees and agents to give access to patient medical records to an unauthorized user.

27

133. As a direct result of Defendant's breach of its duty of confidentiality and privacy and the disclosure of Plaintiff's and the member of the Class confidential medical information, Plaintiff and the members of the Class suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, emotional distress, humiliation and loss of enjoyment of life.

134. Plaintiff and the other Class members suffered and will continue to suffer damages including, but not limited to: (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; and, (vii) emotional distress. At the very least, Plaintiff and the other Class Members are entitled to nominal damages.

135. Defendant's wrongful actions and/or inaction and the resulting Breach (as described above) constituted (and continue to constitute) an invasion of Plaintiff's and the other Class Members' privacy by publicly and wrongfully disclosing their private facts (*i.e.*, their PHI and PII) without their authorization or consent.

## COUNT VII
## NEGLIGENCE *PER SE*

136. Plaintiff incorporates by reference and re-alleges all paragraphs previously alleged herein

137. Plaintiff was under the medical care of the Defendant.

138. The Defendant is a covered entity for purposes of HIPAA.

28

139. Plaintiff and the Class Members are members of the class of persons HIPAA and HITECH were created to protect.

140. Plaintiff's and the Class Members' PHI and PII are the type of information HIPAA and HITECH were created to protect. HIPAA and HITECH were created to protect against the wrongful and unauthorized disclosure of an individual's health information.

141. The Defendant gave protected medical information to an unauthorized third party or unauthorized third parties without the written consent or authorization of Plaintiff and the Class Members.

142. The Defendant gave protected medical information to unauthorized third parties without Plaintiff's and the Class Members' oral consent or written authorization.

143. The information disclosed to an unauthorized third party or unauthorized third parties included private health information about medical treatment.

144. The Defendant's disclosure of the PHI and PII of Plaintiff and the Class Members without consent or authorization is a violation of HIPAA and HITECH and is negligence *per se*.

145. Alternatively, Defendant violated HIPAA and HITECH in that it did not reasonably safeguard the private health information of Plaintiff from any intentional or unintentional use or disclosure that is in violation of the standards, implementation specifications or other requirements pursuant to HIPAA and HITECH including, but not limited to, 42 C.F.R. §§ 164.302-164.318, 45 C.F.R. § 164.500, *et seq*, and 42 U.S.C. §17902, and was therefore negligent *per se*.

146. As a direct result of Defendant's negligence, Plaintiffs suffered damages and injuries, including, without limitation, loss of the benefit of their bargain, a reduction in value of

29

their private health information, loss of privacy, loss of medical expenses, loss of trust, loss of confidentiality, embarrassment, humiliation, emotional distress, and loss of enjoyment of life.

147.     Plaintiff and the other Class members suffered and will continue to suffer damages including, but not limited to:  (i) the untimely and/or inadequate notification of the Breach; (ii) improper disclosure of their PHI and PII; (iii) loss of privacy; (iv) out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or identity fraud pressed upon them by the Breach; (v) the value of their time spent mitigating identity theft and/or identity fraud and/or the increased risk of identity theft and/or identity fraud; (vi) the increased risk of identity theft; and, (vii) emotional distress. At the very least, Plaintiff and the other Class Members are entitled to nominal damages.

148.     As a direct result of Defendant's negligence, Plaintiff have a significantly increased risk of being future victims of identity theft relative to what would be the case in the absence of the Defendant's wrongful acts.

149.     As a direct result of Defendant's negligence, future monitoring, in the form of identity-theft or related identity protection is necessary in order to properly warn Plaintiffs of, and/or protect Plaintiffs from, being a victim of identity theft or other identity-related crimes.

150.     Plaintiff, individually and on behalf of the Class, seek actual damages for all monies paid to Defendant in violation of the HIPAA and HITECH.  In addition, Plaintiff seeks attorneys' fees.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this AMENDED Petition, respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.    Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representatives and appointing Plaintiff's counsel as Lead Counsel for the Class;

B.    Declaring that Defendant breached its implied contract with Plaintiff and Class Members;

C.    Declaring that Defendant negligently disclosed Plaintiff's and the Class Members PHI and PII;

D.    Declaring that Defendant has invaded Plaintiff's and Class Members' privacy;

E.    Declaring that Defendant breached its fiduciary duty to Plaintiff and the Class Members;

F.    Declaring that Defendant breached its implied contract with Plaintiff and the Class Members;

G.    Declaring that Defendant violated the Missouri Merchandising Practices Act;

H.    Declaring that Defendant was negligent by negligently training and supervising its employees and agents;

I.    Ordering Defendant to pay actual damages to Plaintiff and the Class Members;

J.    Ordering Defendant to properly disseminate individualized notice of the Breach to all Class Members;

K.    For an Order enjoining Defendant from continuing to engage in the unlawful business practices alleged herein;

L.    Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff;

M.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and

N.    Ordering such other and further relief as may be just and proper.

## **JURY DEMAND**

Plaintiff, on behalf of herself and the other Class Members, respectfully demands a trial by jury on all of her claims and causes of action so triable.

Respectfully submitted,

31

Maureen M. Brady     MO #57800
Lucy McShane       MO #57957
MCSHANE & BRADY, LLC
1656 Washington Street, Suite 120
Kansas City, MO 64108
Telephone:  (816) 888-8010
Facsimile:  (816) 332-6295
E-mail: mbrady@mcshanebradylaw.com
       lmcshane@mcshanebradylaw.com
**ATTORNEYS FOR PLAINTIFFS**

32

**IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI**
**AT INDEPENDENCE**

| | |
|---|---|
| B.B. individually and on behalf of all<br>others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LINCARE HOLDINGS INC.<br>Serve:<br>C T CORPORATION SYSTEM<br>120 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No: 2216-CV16343
Division: 5

**MOTION AND ORDER FOR**
**APPROVAL AND APPOINTMENT OF PRIVATE PROCESS SERVER**

COMES NOW Plaintiff, by and through its attorney of record, and for its Motion for

Approval/Appoint of Private Process Server, and requests that D&B Legal Services, Inc.: Legal

Names (s): who are qualified persons to serve process, are not parties and are not less than eighteen

(18) years of age, as private process servers in the above cause to serve process in this case.

| | | |
|---|---|---|
| Alisha Allen PPS22-0001 | Brandon Fisher PPS22-0024 | Janice Kirkhart PPS22-0047 |
| Sallie Bailey PPS22-0003 | Dana Fortner PPS22-0286 | Tyler Kirkhart PPS22-0048 |
| Carl Barnett PPS22-0254 | John Frago PPS22-0026 | Cody Kyser PPS22-0049 |
| Thomas Bogue PPS22-0118 | Brad Gordon PPS22-0144 | Raymond Land PPS22-0303 |
| Matthew Bohrer PPS22-0258 | Tom Gorgone PPS22-0145 | Frank Lundien PPS22-0055 |
| Arthur Boyer PPS22-0006 | Charles Gunning PPS22-0028 | Chad Maier PPS22-0312 |
| Scott Brady PPS22-0008 | James Hannah PPS22-0030 | Lyle Malcom PPS22-0313 |
| Nicholas Bull PPS22-0011 | Rufus Harmon PPS22-0031 | Kenneth Marshall PPS22-0057 |
| Gary Burt PPS22-0012 | Zackery Hayes PPS22-0033 | Michael Meador PPS22-0060 |
| Bobby Calvert PPS22-0124 | Stephen Heitz PPS22-0035 | Heather Merfen PPS22-0061 |
| Carolyn Champlin PPS22-0013 | Bridgette Hight PPS22-0293 | Ashlyn Miller PPS22-0560 |
| Michael Conklin PPS22-0267 | Wendy Hilgenberg PPS22-0037 | Matthew Millhollin PPS22-0062 |
| Lisa Corbett PPS22-0269 | James Hise PPS22-0294 | Jason Moody PPS22-0065 |
| Norman Diggs PPS22-0274 | Jennifer Hyman PPS22-0586 | Jeremy Nicholas PPS22-0194 |
| Edwina Ditmore PPS22-0275 | Robyn Jackson PPS22-0043 | Michael Noble PPS22-0196 |
| Andrew Downs PPS22-0016 | Tawanda Johnson PPS22-0166 | Greg Noll PPS22-0068 |
| Chris Drummond PPS22-0017 | Patrick Jones PPS22-0167 | Tory Owens PPS22-0071 |
| Anthony Dunne PPS22-0519 | Chelsea Ketron PPS22-0044 | Bob Peters PPS22-0327 |
| William Ferrell PPS22-0022 | Leisa Ketron PPS22-0045 | Carrie Pfeifer PPS22-0203 |
| Robert Finley PPS22-0023 | Brent Kirkhart PPS22-0046 | Craig Poese PPS22-0073 |

1

Electronically Filed - Jackson - Independence - September 12, 2022 - 02:03 PM

Anthony Powell PPS22-0329
Dee Powell PPS22-0075
Samantha Powell PPS22-0076
William Powell PPS22-0077
Curtis Press PPS22-0079
Kenneth Prewett PPS22-0080
Mark Rauss PPS22-0082
Jorge A Rivera PPS22-0214
Jason Rodgers PPS22-0088
Richard Roth PPS22-0091
Kathy Rulo PPS22-0338
Lawanda Rauss PPS22-0499
Edna Russell PPS22-0093
Brenda Schiwitz PPS22-0094

Dylan Schneider PPS22-0340
Mark Schneider PPS22-0341
Westley Seifert PPS22-0220
Thomas Skinner PPS22-0224
Richard Skyles PPS22-0095
Anthony Spada PPS22-0228
Randy Stone PPS22-0229
Carrie Stroup PPS22-0350
Summer Smith PPS22-0609
Daniel Swinney PPS22-0578
Robert Torrey PPS22-0355
Rachel Trask PPS22-0595
Lucas Traugott PPS22-0356
Daniel Wagner PPS22-0099

Kenneth Wallace PPS22-0100
Ryan Weekley PPS22-0101
Robert Weishar PPS22-0102
Andrew Wheeler PPS22-0103
Andrew Wickliffe PPS22-0104
Gregory Willing PPS22-0105
Conni Wilson PPS22-0107
Allen Yoder PPS22-0366
Rod Yoder PPS22-0367
Stan Yoder PPS22-0368
Greg Zotta PPS22-0110

Respectfully submitted,

_____
Maureen M. Brady     MO #57800
Lucy McShane          MO #57957
MCSHANE & BRADY, LLC
1656 Washington Street, Suite 120
Kansas City, MO 64108
Telephone:  (816) 888-8010
Facsimile:  (816) 332-6295
E-mail: mbrady@mcshanebradylaw.com
          lmcshane@mcshanebradylaw.com
**ATTORNEYS FOR PLAINTIFFS**

2

**ORDER**

It is hereby ordered that the Plaintiff's Motion for Approval and Appointment of private process server is sustained, and the above-named individual is hereby approved and appointed to serve process in the above-captioned matter.

IT IS HEREBY ORDERED.

09/13/2022
DEPUTY COURT ADMINISTRATOR

3



# IN THE 16TH JUDICIAL CIRCUIT **COURT, JACKSON COUNTY, MISSOURI**

| Judge or Division:<br>JAMES FRANCIS KANATZAR | **Case Number: 2216-CV16343** |
|---|---|
| Plaintiff/Petitioner:<br>B B | Plaintiff's/Petitioner's Attorney/Address<br>LUCY GUYOL MCSHANE<br>1656 WASHINGTON STREET<br>SUITE 120<br>KANSAS CITY, MO 64108 |
| Defendant/Respondent:<br>LINCARE HOLDINGS INC. | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

*(vs. appears between Plaintiff and Defendant rows)*

## Summons in Civil Case

**The State of Missouri to:** LINCARE HOLDINGS INC.
**Alias:**

**PRIVATE PROCESS SERVER**

CT CORPORATION SYSTEM
120 SOUTH CENTRAL AVENUE
CLAYTON, MO 63105

*COURT SEAL OF*

*JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

13-SEP-2022
Date

_____
Clerk

Further Information:

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling place or usual abode of the defendant/respondent with _____ a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to

_____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                  Signature of Sheriff or Server

*(Seal)*    **Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

My commission expires: _____          _____
                                              Date                                  Notary Public

| Sheriff's Fees | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| Total | $_____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (11/2021) SM30 (JAKSMCC) *For Court Use Only:* Document ID# 22-SMCC-8017  1  of 1 Civil Procedure Form No. 1, Rules 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:22-cv-00670-FJG   Document 1-1   Filed 10/20/22   Page 85 of 88

## SUMMONS/GARNISHMENT SERVICE PACKETS
## ATTORNEY INFORMATION

Under the Missouri e-filing system now utilized by the 16th Judicial Circuit Court, once a case has been accepted for filing, a clerk prepares the necessary documents for service. The summons/garnishment is sent to the attorney by an e-mail containing a link so that the filer may print and deliver the summons/garnishment, pleadings and any other necessary documents to the person designated to serve the documents.

Pursuant to State statutes, Supreme Court Rules and Local Court Rules, attorneys are required to print, attach and serve specific documents with certain types of Petitions and other filings.

Please refer to the Court's website for instructions on how to assemble the service packets at:

16thcircuit.org  →  Electronic Filing Information → Required Documents for Service – eFiled cases → Summons/Garnishment Service Packet Information.

Please review this information periodically, as revisions are frequently made.   Thank you.


Circuit Court of Jackson County

6/2020

Electronically Filed - Jackson - Independence - September 28, 2022 - 09:56 AM

## AFFIDAVIT OF SERVICE

**State of Missouri**
        **County of Jackson**
        **Circuit Court**

Case Number: 2216-CV16343



POW2022009655

Plaintiff:
**B B**
vs.
Defendant:
**LINCARE HOLDINGS INC**

For: MCSHANE & BRADY, LLC

Received by D & B Legal Services, Inc. on the 20th day of September, 2022 at 9:39 pm to be served on LINCARE HOLDINGS INC C/O CT CORPORATION SYSTEM, 120 SOUTH CEENTRAL AVENUE, CLAYTON, MO 63105. I, MARK KRAUSS , being duly sworn, depose and say that on the 21 day of SEPT , 20 22 at : PM m., executed service by delivering a true copy of the **Summons in Civil Case, First Amended Class Action Petition for Damages, Order, Motion to Keep the Identity of Plaintiff Private, Certificate of Service, Plaintiff's First Request for Production of Documents to Defendant** in accordance with state statutes in the manner marked below:

(X) CORPORATE SERVICE: By serving BONNIE LOVE as INTAKE SPECIALIST .

( ) CORPORATE SERVICE AT ALTERNATE ADDRESS: By serving _____ as _____ at the alternate address of _____

( ) PUBLIC AGENCY: By serving _____ as _____ of the within-named agency.

( )NON SERVICE: For the reason detailed in the Comments below.

COMMENTS:_____

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

Subscribed and Sworn to before me on the 21 day of
SEPT , 22 by the affiant who is personally
known to me.

_LaWanda Rauss_
NOTARY PUBLIC

PROCESS SERVER # _____
Appointed in accordance with State Statutes

**D & B Legal Services, Inc.**
**P.O. Box 7471**
**Overland Park, KS 66207**
**(913) 362-8110**

Our Job Serial Number: 2022009655

> LAWANDA RAUSS
> NOTARY PUBLIC - NOTARY SEAL
> STATE OF MISSOURI
> MY COMMISSION EXPIRES SEPTEMBER 10, 2024
> ST. LOUIS CITY
> COMMISSION #12393005

Copyright © 1992-2022 Database Services, Inc. - Process Server's Toolbox V8.2i

Electronically Filed - Jackson - Independence - September 28, 2022 - 09:56 AM



# IN THE 16TH JUDICIAL CIRCUIT COURT, JACKSON COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JAMES FRANCIS KANATZAR | Case Number: 2216-CV16343 |
| Plaintiff/Petitioner:<br>B B<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>LUCY GUYOL MCSHANE<br>1656 WASHINGTON STREET<br>SUITE 120<br>KANSAS CITY, MO 64108 |
| Defendant/Respondent:<br>LINCARE HOLDINGS INC. | Court Address:<br>308 W Kansas<br>INDEPENDENCE, MO 64050 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp) |

## Summons in Civil Case

| | |
|---|---|
| **The State of Missouri to:** LINCARE HOLDINGS INC.<br>**Alias:**<br><br>CT CORPORATION SYSTEM<br>120 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | **PRIVATE PROCESS SERVER** |

*COURT SEAL OF*

*JACKSON COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

13-SEP-2022
Date

_____
Clerk

Further Information:

## Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling place or usual abode of the defendant/respondent with _____ a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to

_____ (name) _____ (title).

☐ other _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

*(Seal)*          **Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on _____ (date).

My commission expires: _____          _____
Date          Notary Public

**Sheriff's Fees**

| | | |
|---|---|---|
| Summons | $_____ | |
| Non Est | $_____ | |
| Sheriff's Deputy Salary | | |
| Supplemental Surcharge | $_____10.00_____ | |
| Mileage | $_____ | (_____ miles @ $._____ per mile) |
| **Total** | $_____ | |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

OSCA (11/2021) SM30 (JAKSMCC) *For Court Use Only:* Document ID# 22-SMCC-8017 1 of 1 Civil Procedure Form No. 1; Rules 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

Case 4:22-cv-00670-FJG   Document 1-1   Filed 10/20/22   Page 88 of 88